LOWDEN INVESTMENT COMPANY, EDWARD DOUMANI, FRED M. DOUMANI, PAUL LOWDEN, ELENORE DOUMANI, AND SYDNEY DOUMANI, APPELLANTS/CROSS-RESPONDENTS, v. GENERAL ELECTRIC CREDIT COMPANY, RESPONDENT, YUBA GOLDFIELDS, INC., MARVIN KRATTER, AND WILBUR A. OEHLER, CROSS-APPELLANTS.

No. 17245

August 27, 1987                                        741 P.2d 806

*Raggio, Wooster & Lindell,* Reno; *Frank W. Daykin,* Carson City, for Appellants/Cross-Respondents.

*Jolley, Urga, Wirth, Woodbury* and *Jay Smith,* Las Vegas; *Lionel, Sawyer & Collins* and *Linda Mabry,* Las Vegas; *Monsey, Andrews & Reed,* Las Vegas, for Respondent/Cross-Appellants.

*Gibbons & Berman,* Las Vegas, for Wilbur A. Oehler, Cross-Appellant.

# OPINION

*Per Curiam:*

In December 1977, Lowden Investment Company, ("Lowden") through a predecessor in interest, purchased a 1966 Lear Jet. Lowden financed the purchase by borrowing $520,000.00 from General Electric Credit Corporation (GECC), secured by the jet. The debt was personally guaranteed by Edward Doumani, Elenore Doumani, Fred Doumani, Sydney Doumani, and Paul Lowden.

A few months after the purchase, Lowden leased the jet to Las Vegas Jet Charter Service (LVJCS). Trial testimony described LVJCS as a "co-ownership" comprised of Marvin Kratter and Wilbur Oehler. After the three-year lease expired, Lowden sold the plane to LVJCS as evidenced by a purchase agreement which Kratter signed. The agreement recited a purchase price of $590,000.00, $90,000.00 to be paid to Lowden, and the balance represented by the debt to GECC to which the sale was subject.

Trial testimony revealed that when Kratter bought the jet, he was acting for an undisclosed principal, Yuba Goldfields, Inc. ("Yuba"). Kratter was an officer, director, and shareholder of Yuba. Oehler, the co-owner of LVJCS, was also a member of Yuba's Board of Directors. Yuba authorized negotiations to purchase a jet and subsequently ratified the purchase made by LVJCS. LVJCS transferred title within thirty days after the purchase.

Less than one month after Yuba purchased the jet through LVJCS, it contracted to sell it to John McLelland for $650,000.00. The sale agreement required that McLelland pay $150,000.00 in cash and assume the unpaid debt to GECC. McLelland made the payments on the jet until October or November of 1982.

GECC repossessed the jet in early 1983. On May 16, 1983, a public sale was conducted to satisfy the debt, and GECC purchased the jet for $310,000.00.

GECC brought suit to recover from Lowden the difference between the $310,000.00 auction price and the amount owing on the note. Lowden filed a third-party complaint seeking indemnification from all subsequent purchasers of the jet, including Oehler and Kratter dba LVJCS, Yuba, and McLelland.[1] The trial court awarded judgment against Lowden in favor of GECC in the amount of $207,407.17. The trial court awarded relief to Lowden pursuant to its third-party complaint for the full amount of Lowden's liability to GECC. Lowden and the third-party defendants appeal.

---

[1]Default was entered against McLelland.

## THE LOWDEN APPEAL

Lowden's main argument on appeal is that GECC's May 16, 1983 sale of the jet was commercially unreasonable. The California Commercial Code, which the parties agree applies, allows a secured party to dispose of collateral "provided the secured party acts in good faith and in a commercially reasonable manner." Cal.Com.Code 9504(3) (West Supp. 1987). Whether a sale is commercially reasonable is a question of fact and depends on all the circumstances existing at the time of the sale. Clark Equipment Co. v. Mastelotto, Inc., 150 Cal.Rptr. 797, 802 (Ct.App. 1978).

At the completion of trial, the district judge concluded that the auction sale was commercially reasonable. The record amply supports this conclusion. GECC advertised the sale in ten different publications, including the "Controller," an aviation specialty newspaper. The advertising complied with the provisions of Section 9504(3), which require public notice five days prior to the sale. Twelve registered bidders attended the auction, one of whom bid on the jet. Moreover, the price obtained is not altogether inadequate when considering that the jet needed approximately $90,000.00 in repair work. The jet's low wholesale blue book value was $376,000.00, and the high blue book value was $399,000.00. The retail blue book value was $460,000.00. It is also notable that GECC eventually sold the jet for only $156,000.00, a figure significantly lower than its bid at the auction. We conclude that the record supports the trial court's finding that the sale was commercially reasonable, and we decline to disturb the finding. *See* Jones v. Bank of Nevada, 91 Nev. 368, 373, 535 P.2d 1279, 1282 (1975).[2]

Lowden also argues that the trial court erred in excluding on hearsay grounds the testimony of a photographer who attended the auction. The witness sought to testify that the auctioneer or his representative showed to people present at the auction certain defects in the jet.

Hearsay is a statement offered to prove the truth of the matter

---

[2]On appeal, Lowden also argues that the trial court improperly granted partial summary judgment in favor of GECC because issues of material fact remained concerning the commercial reasonableness of GECC's public sale. This argument, however, is misplaced. The trial court's partial summary judgment determined only that Edward Doumani, Elenore Doumani, Fred Doumani, Sydney Doumani, and Paul Lowden had not been released from liability as guarantors. The trial court did not resolve the issue of commercial reasonableness until after trial.

asserted. NRS 51.035. In the instant case, the purpose of the statements was not to prove the existence of defects. The purpose of the proposed testimony was to show that the auctioneer was deprecating the jet, thereby stifling interest and making the sale commercially unreasonable. The trial court therefore erred in excluding the testimony on hearsay grounds. *See* Wilson v. State, 669 P.2d 1292, 1298 (Alaska 1983). We conclude, however, that this error does not warrant reversal.

NRS 47.040 states that "error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. . . ." We do not believe that the auctioneer's disclosing defects would alone make the sale commercially unreasonable. In order for the excluded testimony to be significant, Lowden must have alleged, for example, that the auctioneer's representations were inaccurate. Lowden's offer of proof did not suggest that this was the case, and we are unable to conclude that the trial court's error prejudiced Lowden.

### THE APPEAL OF YUBA, KRATTER, AND OEHLER

The major contention raised by these parties is that the trial court erred in concluding that appellants Kratter and Oehler, as co-owners of LVJCS, and Yuba assumed Lowden's debt to GECC. They also contend that the trial court erred in allowing parol evidence on the issue of an assumption. We disagree.

The agreement whereby LVJCS purchased the jet on behalf of its undisclosed principal, Yuba, stated:

> 2. The purchase price for the Aircraft is Five Hundred Ninety Thousand Dollars ($590,000.00) payable as follows:
>
> (a) Ninety Thousand Five Hundred Fifty Dollars and Eighty Five Cents ($90,550.85) to be paid by Purchaser to Seller at the closing as provided for in Section 3 of this Agreement;
>
> (b) The balance of Four Hundred Ninety-Nine Thousand Four Hundred Forty-Nine Dollars and Fifteen Cents ($499,449.15) is represented by a certain Security Agreement between Seller and GECC dated December 30, 1977, to which this sale is subject and such sum is represented by Seller as being the balance under such security Agreement as of March 24, 1981.

Appellants' contention is that because the sale is described as being "subject to" the GECC debt, there can be no assumption of personal liability on that debt. We recognize that generally the words "subject to" connote an absence of personal liability. *See*

*e.g.,* Helvering v. Southwest Consol. Corp., 315 U.S. 194, 200 (1942); Escrow Found. Bldg. Corp. v. Henderson, 26 F.Supp. 865, 866 (D.Nev. 1939); Corbett v. Rice, 2 Nev. 840, 843 (1866). The language used in the instant agreement, however, does not require such a result.

The purchase agreement describes the entire $590,000.00 purchase as being "payable." It then breaks the price into two components, one being $90,550.85 to be paid at the closing, the second being the balance of the purchase price represented by Lowden's debt to GECC. These provisions read together suggest that the purchaser is accepting responsibility for both components, despite the use of the words "subject to." Thus appellants' argument is unpersuasive. We now turn to the parol evidence issue.

Parol evidence is not admissible to vary or contradict the terms of a written agreement. Daly v. Del E. Webb Corp., 96 Nev. 359, 609 P.2d 319 (1980). However, parol evidence is admissible in order to resolve ambiguities in a written instrument. Trans Western Leasing v. Corrao Constr. Co., 98 Nev. 445, 652 P.2d 1181 (1982). The agreement in question contained both language suggesting that appellants were responsible for the debt and language suggesting they were not. The trial court therefore properly admitted parol evidence to assist in interpreting the agreement. Based on the agreement and other trial evidence, we conclude that substantial evidence supports the trial court's determination that LVJCS and Yuba assumed responsibility for Lowden's obligation to GECC.

Appellant Oehler also contends that the trial court erred in denying his motion to set aside the judgment against him. The basis of his argument is that he was never served with process, nor did he authorize counsel to appear in his behalf. The trial court rejected Oehler's argument, finding that he was personally served with a third-party summons and complaint and that he authorized the appearance of counsel. Our review of the record reveals that substantial evidence supports the trial court's finding, and we decline to disturb it. *See* Kenney v. Greer, 99 Nev. 40, 44, 656 P.2d 857, 859 (1983).

Finally, appellants Yuba and Kratter assert that the trial court improperly awarded as damages the attorney's fees which Lowden was required to pay GECC. We disagree.

Generally attorney's fees may not be awarded unless an agreement, statute, or rule provides for such. Von Ehrensmann v. Lee,

98 Nev. 335, 647 P.2d 377 (1982). However, attorney's fees attributable to plaintiff's litigation with other parties may be recovered as damages when defendant's conduct caused the litigation. *See* Elijah v. Fender, 674 P.2d 946, 951 (Colo. 1984); *see also* American Fed. Musicians v. Reno's Riverside, 86 Nev. 695, 699, 475 P.2d 220, 222 (1970). In the instant case, the trial court declined to award Lowden the attorney's fees incurred in pursuing its third-party complaint against Kratter and Yuba. The only fees allowed against Kratter and Yuba were those which Lowden was required to pay GECC. This award as an element of damages was proper.

We have considered the parties' remaining contentions and conclude they lack merit.