DOUGLAS GAYNOR ET UX. *v.* UNION TRUST COMPANY
(14001)

PETERS, C. J., SHEA, CALLAHAN, GLASS and BORDEN, Js.

Argued September 27—decision released November 13, 1990

*Joanne S. Faulkner,* with whom was *John C. Wirz-bicki,* for the appellants (plaintiffs).

*Anne R. Hoyt,* with whom was *Lisa Pacelle,* for the appellee (defendant).

PETERS, C. J. This case concerns the propriety of the procedures used by a secured creditor to repossess and resell a used car after the consumer debtors' failure to make timely instalment payments. The plaintiffs, Douglas L. and Lisa Gaynor, brought a four count action against the defendant, Union Trust Company, alleging violations of the Uniform Commercial Code (UCC), the Retail Instalment Sales Financing Act (RISFA), the Connecticut Unfair Trade Practices Act (CUTPA) and the Creditors' Collection Practices Act (CCPA). The defendant counterclaimed to recover a deficiency judgment for the amount of the plaintiffs' remaining indebtedness after due credit for the net proceeds of the resale. The trial court, *Koletsky, J.,* rendered judgment for the defendant on the complaint and, in a diminished amount, on the counterclaim. In accordance with Practice Book § 4023, we transferred the plaintiffs' appeal to this court, and now reverse in part.

It is undisputed that on August 26, 1986, the plaintiffs borrowed $7000 from the defendant in order to finance the purchase of a used car, a 1982 Pontiac, for $7200.[1] As security for the loan, the plaintiffs gave the defendant a security interest in the car. The security agreement contained clauses purporting to authorize resale upon the plaintiffs' default and to limit the implications of waiver of the defendant's rights.

From the outset, the plaintiffs consistently made their instalment payments later than the schedule stipulated in the security agreement. One late payment check was subsequently returned for lack of sufficient

---

[1] The dealer that sold the car to the plaintiffs erroneously represented the car to be a 1983 rather than a 1982 Pontiac. The plaintiffs conceded in oral argument that the defendant bore no responsibility for this error.

funds. The defendant repeatedly telephoned the plaintiffs to advise them of their defaults and to request payment. In April, 1987, the defendant warned the plaintiffs by letter that their defaults put them at risk of repossession. A further conversation between the parties in early July resulted in a promise by the plaintiffs to make specified payments to render their account more current. Although the plaintiffs made the promised July payment, the defendant never received a promised $300 payment that was due on August 1.[2]

The defendant repossessed the car on August 16, 1987. Two days later, the plaintiffs received from the defendant a notice of repossession, describing their rights of redemption, as well as a notice that, on or after September 1, 1987, the car would be resold at a private sale. After soliciting six bids, all at wholesale, the defendant sold the car for $2000 to the highest bidder on September 16, 1987. The defendant promptly notified the plaintiffs of the sale, the sales price, the costs claimed to have attended the repossession and resale, and the amount of the contract balance still claimed to be due, $4432.24.

The trial court concluded that the plaintiffs had failed to demonstrate any actionable deficiencies in the repossession or resale of their car, and accordingly rendered judgment in favor of the defendant on the complaint. On the counterclaim, the court found that the fair retail market value of the repossessed car was $3000, and that the defendant had failed to prove its claim for a repossession charge. It accordingly rendered judgment for the defendant in the reduced amount of $3232.24.

Only the plaintiffs have appealed. Although they do not deny their default in making instalment payments

---

[2] Although the plaintiffs claimed that they had mailed a check for $300 in timely fashion, the trial court did not decide whether the check had in fact been sent.

in a timely fashion, they continue to assert that the defendant wrongfully repossessed and resold their car. They maintain further that the defendant's alleged misconduct entitles them to affirmative relief in the form of statutory damages and attorney's fees.

I

The plaintiffs challenge the validity of the defendant's repossession of their car on three grounds.[3] They claim that: (1) the bank had no statutory right to repossess; (2) the bank could not reinstate any contractual right it might have possessed without giving the plaintiffs written notice to that effect; and (3) the bank's notice of repossession did not comply with the statutory requirements contained in the UCC; General Statutes §§ 42a-9-504 and 42a-9-506;[4] and in RISFA. General

---

[3] At trial the plaintiffs also maintained that the repossession of their car was a breach of the peace. The trial court ruled against this contention, which has not been further pursued on appeal.

[4] General Statutes § 42a-9-504 provides in relevant part: "SECURED PARTY'S RIGHT TO DISPOSE OF COLLATERAL AFTER DEFAULT; EFFECT OF DISPOSITION. (1) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. Any sale of goods is subject to article 2. The proceeds of disposition shall be applied in the order following to (a) the reasonable expenses of retaking, holding, preparing for sale or lease, selling, leasing and the like and, to the extent provided for in the agreement and not prohibited by law, the reasonable attorneys' fees and legal expenses incurred by the secured party; (b) the satisfaction of indebtedness secured by the security interest under which the disposition is made; (c) the satisfaction of indebtedness secured by any subordinate security interest in the collateral if written notification of demand therefor is received before distribution of the proceeds is completed. . . .

"(2) If the security interest secures an indebtedness, the secured party must account to the debtor for any surplus and, unless otherwise agreed, the debtor is liable for any deficiency . . . .

"(3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless col-

Statutes § 42-98.[5] The trial court concluded to the contrary in large part because it found that the plaintiffs knew that they were "behind and continually behind

lateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods no other notification need be sent. . . ."

General Statutes § 42a-9-506 provides: "DEBTOR'S RIGHT TO REDEEM COLLATERAL. At any time before the secured party has disposed of collateral or entered into a contract for its disposition under section 42a-9-504 or before the obligation has been discharged under section 42a-9-505 (2) the debtor or any other secured party may unless otherwise agreed in writing after default redeem the collateral by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding and preparing the collateral for disposition, in arranging for the sale, and to the extent provided in the agreement and not prohibited by law, his reasonable attorney's fees and legal expenses."

[5] General Statutes § 42-98 provides in relevant part: "FORECLOSURE. (a) REPOSSESSION. When the retail buyer is in default in the payment of any sum due under the retail instalment contract or instalment loan contract, or in the performance of any other condition which such contract requires him to perform, or in the performance of any promise, the breach of which is by such contract expressly made a ground for the retaking of the goods, the holder of the contract may retake possession thereof. Unless the goods can be retaken without breach of the peace, it shall be retaken by legal process, but nothing herein contained shall be construed to authorize a violation of the criminal law. In the case of repossession of any motor vehicle without the knowledge of the retail buyer, the local police department shall be notified of such repossession immediately thereafter. . . .

"(c) REDEMPTION. If the holder of such contract does not give the notice of intention to retake, described in subsection (b), he shall retain such goods for fifteen days after the retaking within the state in which they were located when retaken. During such period the retail buyer, upon payment or tender of the unaccelerated amount due under such contract at the time of retaking and interest, or upon performance or tender of performance of such other condition as may be named in such contract as precedent to the retail buyer's continued possession of such goods, or upon performance or tender of performance of any other promise for the breach of which such goods were retaken, and upon payment of the actual and reasonable expenses of any retaking and storing, may redeem such goods and become entitled to take possession of the same and to continue in the performance

in [their] payments." It found further that the plaintiffs had not been lulled into any misapprehension by the defendant's conduct and that the plaintiffs' failure to pay $300 to the defendant on their overdue debt on the first of August triggered the repossession in accordance with the terms of their contract with the defendant. Finally, it held that the notice of repossession gave the plaintiffs fair notice that a private sale would be held on September 1 or thereafter, and that they then owed $785.09 plus the listed costs of repossession and storage. We agree with the trial court except for its

of such contract as if no default had occurred. The holder of such contract shall within three days of the retaking furnish or mail, by registered or certified mail, to the last known address of the buyer a written statement of the unaccelerated sum due under such contract and the actual and reasonable expense of any retaking and storing. For failure to furnish or mail such statement as required by this section, the holder of the contract shall forfeit the right to claim payment for the actual and reasonable expenses of retaking and storage, and also shall be liable for the actual damages suffered because of such failure. If such goods are perishable so that retention for fifteen days as herein prescribed would result in their destruction or substantial injury, the provisions of this subsection shall not apply and the holder of the contract may resell the goods immediately upon such retaking.

"(d) COMPULSORY RESALE. If the retail buyer does not redeem such goods within fifteen days after the holder of the contract has retaken possession, the holder of the contract shall sell such goods at public or private sale which sale may be held not less than fifteen days and shall be held not more than one hundred eighty days after the retaking. . . . The holder of the contract shall give the retail buyer not less than ten days' written notice of the time and place of any public sale, or the time after which any private sale or other intended disposition is to be made, either personally or by registered mail or by certified mail receipted for on mailing directed to the retail buyer at his last-known place of business or residence. . . . The proceeds of the resale shall be considered to be either the amount paid for such goods at such sale or the fair cash retail market value of such goods at the time of repossession, whichever is the greater, except as otherwise provided in subsection (g) of this section.

"(e) PROCEEDS OF RESALE. Proceeds of the resale shall be applied (1) to the payment of the actual and reasonable expenses thereof, (2) to the payment of the actual and reasonable expenses of any retaking and storing of said goods, (3) to the satisfaction of the balance due under the contract. Within thirty days of the resale, the holder of the contract shall give the

resolution of the issue of the effect of inaccuracies in the notice of repossession concerning the defendant's incidental costs of repossession and storage.

## A

The plaintiffs' claim that the defendant lacked statutory authority to repossess their car rests on their construction of the relevant provision of RISFA, General Statutes § 42-98 (a). The clause in the security agreement on which the defendant relied as authorizing repossession stated: "If you break any of your promises

retail buyer a written statement itemizing the disposition of the proceeds. Any sum remaining after the satisfaction of such claims shall be paid to the retail buyer.

"(f) DEFICIENCY ON RESALE. Notwithstanding that the proceeds of the resale are not sufficient to defray the actual and reasonable expenses thereof, and also such actual and reasonable expenses of any retaking and storing of such goods and the balance due under the contract, the holder of the contract may not recover the deficiency from the retail buyer . . . except as provided in subsection (g) of this section.

"(g) FAIR MARKET VALUE. If the goods retaken is a motor vehicle the aggregate cash price of which was more than two thousand dollars, the prima facie fair market value of such motor vehicle shall be one-half of the sum of the average trade-in value plus the average retail value of such motor vehicle as stated in the National Automobile Dealers Association Used Car Guide, Eastern Edition, as of the date of repossession. In the event that the value of such motor vehicle is not stated in such publication, then the fair market value at retail minus the reasonable costs of resale shall be determined by the court. The prima facie evidence of fair market value of such motor vehicle so determined may be rebutted only by direct in-court testimony. If such value of the motor vehicle is less than the balance due under the contract, plus the actual and reasonable expenses of the retaking of possession, the holder of the contract may recover from the retail buyer . . . as a deficiency, the amount by which such liability exceeds such fair market value, as defined in this subsection. If the actual resale price received by the holder exceeds such fair market value, as defined in this subsection, the actual resale price shall govern.

"(i) RECOVERY OF PART PAYMENTS. If the holder of the contract fails to comply with the provisions of subsections (c), (d), (e), (f), (g) and (h), after retaking the goods, the retail buyer may recover from the holder of the contract his actual damages, if any, and in no event less than one-fourth of the sum of all payments which have been made under the contract."

in this agreement, we can sell or otherwise get money for this collateral and apply the proceeds to the unpaid balance of this loan." The plaintiffs do not contest the trial court's finding that the plaintiffs in fact had notice of the defendant's right to repossess. They maintain instead that, as a matter of law, this contract clause, because it does not refer expressly to "repossession" or "retaking," violated the statutory mandate in § 42-98 (a) that limits a permissible retaking to nonperformance of a promise by a consumer buyer "the breach of which is by such contract expressly made a ground for the retaking of the goods."

The question is whether the text of § 42-98 (a) supports the plaintiffs' argument. It provides in relevant part: "When the retail buyer is in default in the payment of any sum due under the retail instalment contract or instalment loan contract, or in the performance of any other condition which such contract requires him to perform, or in the performance of any promise, the breach of which is by such contract expressly made a ground for the retaking of the goods, the holder of the contract may retake possession thereof." Although consumer legislation must be interpreted so as to implement its remedial purpose of protection for consumer buyers; *Mack Financial Corporation* v. *Crossley,* 209 Conn. 163, 166, 550 A.2d 303 (1988); *Barco Auto Leasing Corporation* v. *House,* 202 Conn. 106, 116, 520 A.2d 162 (1987); *Rhodes* v. *Hartford,* 201 Conn. 89, 95, 513 A.2d 124 (1986); *Keyes* v. *Brown,* 155 Conn. 469, 474, 232 A.2d 486 (1967); even such legislation cannot transcend its statutorily defined ambit. " 'The meaning to be given a statute is determined by legislative intent and that legislative intent must be determined by language actually used in the legislation.' *Eason* v. *Welfare Commissioner,* 171 Conn. 630, 634, 370 A.2d 1082 (1976), cert. denied, 432 U.S. 907, 97 S. Ct. 2953, 53 L. Ed. 2d 1079 (1977) . . . ." *Demar* v. *Open Space*

*& Conservation Commission,* 211 Conn. 416, 425, 559 A.2d 1103 (1989). Significantly, the use of the disjunctive "or" between subparts of a statute indicates that the legislature intended its parts to be read separately, in the disjunctive. *Bahre* v. *Hogbloom,* 162 Conn. 549, 557, 295 A.2d 547 (1972); *State* v. *Dennis,* 150 Conn. 245, 248, 188 A.2d 65 (1963).

In order for the plaintiffs to prevail, we would have to construe the "expressly made" clause in § 42-98 (a) as modifying all the antecedent clauses in the subsection. As the defendant correctly notes, however, subsection (a) requires a security agreement expressly to authorize repossession only with regard to the *third* contingency specified therein, a nonperformance by the buyer of "any promise." The defendant's linguistically logical construction finds statutory support in the text of § 42-98 (c), which expressly distinguishes between retakings premised upon default in payment or nonfulfillment of a condition, and retakings premised upon nonperformance "of any other promise for the breach of which such goods were retaken."

We therefore construe § 42-98 (a) as requiring no special contractual language to communicate the consequences of a default in payments, such as occurred in this case, or a nonperformance of a condition. The legislature might logically have deemed it important to require a consumer contract expressly to give warning of the risk of retaking in the event of a failure to perform "any promise" because consumer buyers might otherwise not have understood that they might lose their collateral even though their payments were current and they had fulfilled all the conditions in their instalment contract. That is not this case. We conclude, accordingly, that the defendant had the statutory authority to retake the plaintiffs' car.

## B

The plaintiffs next claim that the defendant lost any right to repossession grounded in defaults on instalment payments because of its repeated acceptance of late payments over the lifetime of the security agreement. This pattern of behavior, according to the plaintiffs, constituted either a waiver of the defendant's right to insist on timely payments or a course of conduct amounting to a modification of the terms of the agreement. See General Statutes § 42a-1-205.[6] Under either theory, the plaintiffs contend that the defendant could not retake their car without first giving them written notice of its intent to reinstate the payment schedule contained in the security agreement.

The plaintiffs' claim is difficult to square with two express provisions in the security agreement. One clause provided: *"Waiver of Notice.* If you do not repay this loan when it becomes due or do not keep your other promises in this agreement, we do not have to make a protest or give you any notice." Another clause stated: *"Delay in Enforcement.* We can delay enforcing any of our rights without losing them. If on any occasion we should waive one of our rights, it does not necessarily mean that we will waive that right in the future. We will still have that right." This court has upheld the enforceability of such clauses when a landlord sues to regain possession from a defaulting tenant. *S.H.V.C., Inc.* v. *Roy,* 188 Conn. 503, 505–11, 450 A.2d 351 (1982).

---

[6] General Statutes § 42a-1-205 provides in relevant part: "COURSE OF DEALING AND USAGE OF TRADE. . . .

"(3) A course of dealing between parties and any usage of trade in the vocation or trade in which they are engaged or of which they are or should be aware give particular meaning to and supplement or qualify terms of an agreement."

The plaintiffs maintain, however, that, particularly in the context of consumer transactions, we should adopt the position taken in a number of other jurisdictions in which courts have deemed it inconsistent for a creditor to elect to continue a contract in force, by accepting late payments, while simultaneously enforcing a right to retake. See, e.g., *Ford Motor Credit Co.* v. *Waters,* 273 So. 2d 96, 99–100 (Fla. App. 1973); *Barrier* v. *Marine Midland Trust Co.,* 263 Md. 596, 608–11, 284 A.2d 418 (1971); *Cobb* v. *Midwest Recovery Bureau,* 295 N.W.2d 232, 236–38 (Minn. 1980); *Nevada National Bank* v. *Huff,* 94 Nev. 506, 512–14, 582 P.2d 364 (1978); *Slusser* v. *Wyrick,* 28 Ohio App. 3d 96, 97–98, 502 N.E.2d 259 (1986); *Fontaine* v. *Industrial National Bank,* 111 R.I. 6, 11–12, 298 A.2d 521 (1973); *Ford Motor Credit Co.* v. *Washington,* 573 S.W.2d 616, 618 (Tex. Civ. App. 1978).

The essence of the plaintiffs' contention is that no creditor should be allowed to invoke formal contractual provisions that a consumer debtor had reason to believe would not be enforced. Whatever the merits of this legal principle might be in the abstract, it cannot prevail in light of two crucial findings of fact by the trial court in this case. One finding is that the repossession was precipitated by the defendant's failure to receive a $300 payment that the plaintiffs had expressly agreed to pay on August 1, 1987, in accordance with a work-out plan to make their indebtedness more current.[7] This case therefore cannot be characterized as one in which a creditor without warning retakes goods following its silent acceptance of one or more belated instalment payments on the part of the debtor. The second finding is that the plaintiffs were not lulled into

---

[7] Douglas Gaynor, one of the plaintiffs, testified at trial about a conversation with an officer of the defendant in July, 1987. At that time, he had agreed to make payments to "catch up on the back monies that were owed. . . . The arrangement was made that I would be sending them three hundred dollars the first week of the month . . . ."

any misapprehensions about the jeopardy that they faced because of their lateness in making payments. We conclude, accordingly, that the defendant had the contractual authority to repossess the plaintiffs' car.

C

The plaintiffs' final two arguments about the validity of the defendant's repossession challenge the sufficiency of the notice that the defendant sent to the plaintiffs after the repossession. The timeliness of the notice is not at issue. The plaintiffs contend, instead, that the content of the notice violated the relevant provisions of (1) the Uniform Commercial Code and (2) the Retail Instalment Sales Financing Act, principally because it did not accurately describe the plaintiffs' right of redemption.

The notice that the plaintiffs received consisted of two letters dated August 17, 1987. The first letter advised the plaintiffs that they could redeem their car by paying the currently accrued indebtedness of $785.09 plus the expenses of repossession and storage, if they acted by September 1, 1987, and informed them that thereafter, if their default continued uncured, they would be liable for the full accelerated unpaid balance of $6135.24 plus expenses.[8] The second letter advised

---

[8] The letter read as follows:

August 17, 1987

"Mr. Douglas Gaynor
Ms. Lisa Gaynor
152 Michigan Drive
Groton, CT 06340

Re: 1982 Pontiac
     Serial # 1G2AF19RXCG519759

Dear Mr. and Ms. Gaynor,

This is to advise you that the above described vehicle has been repossessed due to default of your April 25, 1987 installment and all successive installments that were due and payable in the amount of $225.01 each.

If you wish to retain your right to redeem said vehicle, you must pay all expenses of repossession, in the amount of $200.00, and storage, in the

them that, on or after September 1, 1987, the defendant would sell their car at a private sale to be held at a designated garage.[9] The defendant actually sold the car, at a private sale, on September 16, 1987.

amount of $5.00 per day, plus the unaccelerated balance due, in the amount of $785.09. Said unaccelerated balance due consists of all past due installment payments, plus any late charges if applicable. If all of the aforesaid expenses are paid within fifteen days of the retaking of said vehicle, and all events of default are cured, you may redeem such vehicle and become entitled to take possession of same and to continue in the performance of your security agreement as if no default had occurred.

If all events of default are not cured within fifteen days of said retaking, under the terms and conditions contained in the security agreement between you and Union Trust Company, dated August 12, 1986, we will declare the full unpaid balance, in the amount of $6,135.24, plus all expenses of repossession and storage, due by September 1, 1987, otherwise, this vehicle will be sold.

Very truly yours,

/s/A. M. DeMar
Collection Manager

AMD/vip
CERTIFIED MAIL
RET. REC. REQ.''
  [9] The notice of private sale read as follows:

"NOTICE OF PRIVATE SALE

August 17, 1987

Mr. Douglas Gaynor
Ms. Lisa Gaynor
152 Michigan Drive
Groton, CT 06340

Notice is hereby given that on or after September 1, 1987 the undersigned will sell at private sale the following:

–1982 Pontiac
–Serial # 1G2AF19RXCG519759

The goods to be sold are located at and the sale will take place at:

–Coastal Recovery, Inc.
–86 Windy Hill Road
  Westbrook, CT 06498

The above described goods are held by the undersigned as collateral securing indebtedness and obligations of:

The plaintiffs contend that this notice was misleading because it did not inform them that, even after September 1, they could redeem the car for the accelerated balance of $6135.24 plus expenses. An underlying premise of this argument is that the applicable statutes require notice of such a right to redeem. The Uniform Commercial Code, in General Statutes § 42a-9-504 (3), requires only that "reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor." The UCC's redemption section, General Statutes § 42a-9-506, empowers a debtor to redeem without imposing any further notice requirement on the secured creditor. The Retail Instalment Sales Financing Act, in General Statutes § 42-98 (c), describes the notice that must be provided to a retail buyer to enable him to exercise his right to redeem, within a fifteen day statutory redemption period, upon payment or tender of the *unaccelerated* amount due plus expenses. Upon expiration of the § 42-98 (c) redemption period, § 42-98 (d) merely requires the secured creditor to sell the goods within 165 days, and, in the event of a private sale, to provide "written notice of . . . the time after which any private sale or other

---

–Douglas Gaynor
–Lisa Gaynor
152 Michigan Drive
Groton, CT 06340

The undersigned is selling the above described goods pursuant to Sections 42a-9-504 and 43-98 of the Connecticut General Statutes, which provide for the sale and disposition of collateral by a secured party following default by a debtor.

UNION TRUST COMPANY

By: /s/A. M. DeMar
A. Michael DeMar
Collections Manager

CERTIFIED MAIL
RETURN RECEIPT REQUESTED"

intended disposition is to be made." These notice requirements, with which the defendant complied, do not envisage that the secured creditor must provide specific guidance for the unlikely event that a consumer debtor who could not redeem his property by paying his unaccelerated debt at the time of the repossession would be in a position, shortly thereafter, to repay his larger accelerated debt.

The plaintiffs seek to sidestep these statutory impediments to their argument by focusing on the particular language of the statement of their redemption rights, in the letters of August 17, 1987, as being inherently misleading. The plaintiffs maintain that the defendant misled them about their post-September 1 redemption rights because of the manner in which the defendant advised them of their pre-September 1 redemption rights. They cite a number of judicial decisions in which courts, on the particular facts of the cases before them, have found redemption notices to be misleading and hence unenforceable. *Bradford* v. *General Electric Credit Corporation,* 183 Ga. App. 782, 782–83, 359 S.E.2d 757 (1987); *Topeka Datsun Motor Co.* v. *Stratton,* 12 Kan. App. 2d 95, 103–104, 736 P.2d 82 (1987); *First National Bank of Maryland* v. *DiDomenico,* 302 Md. 290, 295–97, 487 A.2d 646 (1985). To the extent that an inquiry into the misleading nature of a particular notice is inherently factual, these cases are distinguishable because of the trial court's contrary findings. The court expressly found that the notice sent by the defendant contained no material misstatement and that the plaintiffs had no intent to redeem the property, either for the unaccelerated or the accelerated amount of the debt.

In principle, furthermore, the plaintiffs' claim that they were entitled to proper notice of "the time frame for redemption" is inconsistent with the established

wisdom that, for a private sale, a secured creditor has no obligation to give notice of the date of the contemplated disposition of the secured collateral. See, e.g., *Matter of Excello Press, Inc.,* 890 F.2d 896, 903 (7th Cir. 1989) (under New York law); *Ford Motor Credit Co.* v. *Solway,* 825 F.2d 1213, 1218–19 (7th Cir. 1987) (under Illinois law); *Piper Acceptance Corporation* v. *Yarbrough,* 702 F.2d 733, 735 (8th Cir. 1983) (under Arkansas law); *Brown* v. *Ford,* 280 Ark. 261, 264, 658 S.W.2d 355 (1983); *Western National Bank of Colorado Springs N.A.* v. *VFW Post 8103,* 660 P.2d 919, 920 (Colo. App. 1983); *Ford Motor Credit Co.* v. *Jackson,* 126 Ill. App. 3d 124, 126, 466 N.E.2d 1330 (1984); *Allard* v. *Ford Motor Credit Co.,* 139 Vt. 162, 166, 422 A.2d 940 (1980). Only notification of the date when their car would be sold would inform the plaintiffs of the time when their right to redeem would expire. In the absence of a statutory requirement for such notification, either under the UCC or under RISFA, we conclude that the trial court correctly held that the defendant's repossession notice reasonably advised the plaintiffs of their redemption rights.

The plaintiffs contend, secondarily, that the repossession notice violated § 42-98 (c) because it inaccurately listed the costs of repossession and storage. In its first letter of August 17, 1987, the defendant described the charges the plaintiffs would have to pay in order to cure their default and to redeem their property. In addition to their unpaid balance then due, the plaintiffs were informed they would have to pay "all expenses of repossession, in the amount of $200.00, and storage, in the amount of $5.00 per day." The trial court found that, although $200 would have been a reasonable charge for repossession, the defendant had presented no evidence to that effect at trial, and the court therefore disallowed recovery for that charge in the defendant's claim for a deficiency judgment. The court

further acknowledged that the storage charge was inaccurately reported because, although $5 represented the amount previously charged the defendant by the repossessor, the actual billing in this case amounted to only $3 a day. The court also found, however, that the facts stated in the first August 17 letter were honestly believed by the defendant to be accurate, and that the plaintiffs were benefited by receiving a subsequent credit for the reduced storage charges when the defendant learned of them as a result of an invoice subsequently tendered by the repossessor on September 11, 1987. The court therefore concluded that the defendant had complied with the requirement of § 42-98 (c) that the consumer buyer receive "a written statement of the unaccelerated sum due under [the instalment] contract and the actual and reasonable expense of any retaking and storing." The plaintiffs do not contest the trial court's factual finding that the deficiencies in the notice sent to them were inadvertent and in good faith, but they contend that the requirements of § 42-98 (c) do not contain a good faith exception. We agree with the plaintiffs.

In consumer transactions, strict compliance with statutory provisions that prescribe the informational content of retail instalment contracts is mandatory and is not excused by inadvertence. *Mack Financial Corporation* v. *Crossley,* 209 Conn. 163, 166–67, 550 A.2d 303 (1988); *Barco Auto Leasing Corporation* v. *House,* 202 Conn. 106, 118, 520 A.2d 162 (1987); *Keyes* v. *Brown,* supra, 474–75. The governing statute, § 42-98 (c), expressly provides the appropriate remedy: "For failure to furnish or mail such statement as required by this section, the holder of the contract shall forfeit the right to claim payment for the actual and reasonable expenses of retaking and storage, and also shall be liable for the actual damages suffered because of such failure." Although the trial court did not find

that the plaintiffs had sustained actual damages, the defendant nonetheless statutorily forfeited its right to recover both its repossession and its storage costs because of the inaccuracy of its notice. The trial court should have reduced the defendant's recovery to reflect this statutory mandate in its entirety.

The plaintiffs' brief further suggests that, in addition to forfeiting recovery of the expenses of retaking and storage, as specified in § 42-98 (c), the defendant is also obligated to pay a penalty by way of minimum damages under § 42-98 (i). That subsection provides that "[i]f the holder of the [instalment] contract fails to comply with the provisions of subsections (c), (d), (e), (f), (g) and (h), after retaking the goods, the retail buyer may recover from the holder of the contract his actual damages, if any, and in no event less than one-fourth of the sum of all payments which have been made under the contract." The record is unclear how, if at all, this issue was raised at trial since the issue is not addressed in the trial court's oral memorandum of decision, for which no further articulation was sought.

For inadvertent misstatements in a notice of retaking, such as occurred in this case, we are persuaded that the controlling provision is not the generally applicable sanction provided in § 42-98 (i) but is rather the specifically applicable sanction contained in § 42-98 (c). " 'It is a well-settled principle of construction that specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling. *Charlton Press, Inc.* v. *Sullivan,* 153 Conn. 103, 110, 214 A.2d 354 [1965]. Where there are two provisions in a statute, one of which is general and designed to apply to cases generally, and the other is particular and relates to only one case or subject within the scope of a general provision, then the particular provision must

prevail; and if both cannot apply, the particular provision will be treated as an exception to the general provision. *Kelly* v. *Dewey,* 111 Conn. 281, 292, 149 A. 840 [1930].' " *Budkofsky* v. *Commissioner of Motor Vehicles,* 177 Conn. 588, 592, 419 A.2d 333 (1979). We therefore conclude that the defendant need not pay the penalties stipulated by § 42-98 (i).

## II

The plaintiffs also challenge the propriety of the resale of their car by the defendant and the deficiency judgment that arose therefrom. They maintain that the resale conducted by the defendant was not commercially reasonable under the standards of the UCC, General Statutes § 42a-9-504 (3), and of RISFA, General Statutes § 42-98, and that the post-resale notice did not comply with the requirements of RISFA, General Statutes § 42-98 (e). We disagree.

## A

A secured creditor's disposition of retaken property after default must comply with § 42a-9-504 (3), which requires that "every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable." The defendant in this case solicited six bids, all at wholesale, and accepted the highest. The trial court found that the defendant had "made a reasonable effort to get the property sold as quickly as possible as best [it] could." The court determined, by way of judicial notice, that it would not have been cost-efficient for the defendant, a lending institution, to maintain an office where potential buyers could inspect the cars it repossessed, or to establish a retail outlet for which walk-in buyers could be solicited. The court concluded, accordingly, that the defendant had met its burden of proving compliance with § 42a-9-504.

As a general matter, the plaintiffs maintain that the defendant did not introduce sufficient evidence at trial to prove the "commercial reasonableness" of its resale. In *Connecticut Bank & Trust Co.* v. *Incendy,* 207 Conn. 15, 28, 540 A.2d 32 (1988), we held that such proof generally requires "evidence of such things as the amount of advertising done, the number of people contacted, normal commercial practices in disposing of the particular collateral, the length of time between the repossession and the sale, whether any deterioration in the collateral has occurred, the number of bids received, and the price obtained."

In outlining the contours of "commercial reasonableness" in *Incendy,* we did not intend to establish strict evidentiary standards that must invariably be met in each and every case. The trial court was entitled to find, from the evidence adduced at trial, that the defendant had made a good faith effort to procure a reasonable number of bids for the car which, considering its then condition,[10] was sold for a reasonable price. Under General Statutes § 42a-9-507 (2), "[t]he fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner." The reasonableness of a commercial resale is ordinarily a question of fact. *Gulf Homes, Inc.* v. *Goubeaux,* 124 Ariz. 142, 144, 602 P.2d 810 (1979); *John*

---

[10] The car had approximately 79,500 miles on its odometer when it was repossessed. The evidence regarding the car's condition at repossession was inconsistent. The named plaintiff, Douglas Gaynor, testified that the car was "in excellent condition." One used car dealer who had bid unsuccessfully on the car testified that it was in "deplorable" condition; that it had an oil leak, two holes in the rear deck from which stereo speakers had been removed, and that it was filthy and in need of rear shocks and paint. The used car dealer who purchased the car from the bank testified that the car was worth approximately $500 less than its $4000 book value because it had some cosmetic flaws and required some mechanical repairs.

*Deere Leasing Co.* v. *Fraker,* 395 N.W.2d 885, 887 (Iowa 1986); *Westgate State Bank* v. *Clark,* 231 Kan. 81, 91, 642 P.2d 961 (1982); *Kearney State Bank & Trust Co.* v. *Scheer-Williams,* 229 Neb. 705, 715, 428 N.W.2d 888 (1988); *Lowden Investment Co.* v. *General Electric Credit Co.,* 103 Nev. 374, 377, 741 P.2d 806 (1987); *Lindberg* v. *Williston Industrial Supply Corporation,* 411 N.W.2d 368, 374 (N.D. 1987); *Mid-Continent Refrigerator Co.* v. *Carpenter,* 287 S.C. 624, 625, 340 S.E.2d 559 (1986); *First Bank of South Dakota* v. *VonEye,* 425 N.W.2d 630, 636 (S.D. 1988); *Daniell* v. *Citizens Bank,* 754 S.W.2d 407, 410 (Tex. Civ. App. 1988); *Appleton State Bank* v. *Van Dyke Ford, Inc.,* 90 Wis. 2d 200, 205, 279 N.W.2d 443 (1979). We decline to hold, as a matter of law, that every private resale must be advertised or that a lending institution's private resale at wholesale is necessarily commercially unreasonable.[11] The present record adequately supports the trial court's finding of commercial reasonableness in the circumstances of this case.

The plaintiffs also assert that it was inconsistent for the court to have found the resale to be commercially reasonable when it had concluded that the defendant had failed to prove the reasonableness of the costs of its repossession. To the extent that this assertion relies on § 42-98 (c), our prior discussion indicates that the sanction contained in that subsection is an appropriate remedy for the defendant's default. Notably, neither subsection (c) nor the remainder of § 42-98 expressly

---

[11] Although the legislature could have imposed more stringent ground rules for resales of consumer goods, it chose instead, in General Statutes § 42-98 (d) and (g), discussed infra, to limit the amount of a consumer buyer's exposure to a deficiency judgment by requiring a credit either for the actual resale value of the goods resold, or for their fair retail value, whichever is the greater. A consumer buyer who does not redeem his property is thus not likely to be injured by an otherwise commercially reasonable resale that occurs at wholesale rather than at retail.

links a failure to prove pre-resale repossession costs with the commercial reasonableness of a subsequent resale. Furthermore, although § 42-98 (d) makes a timely resale compulsory, it contains no specific requirements about the manner in which repossessed goods must be resold, and thereby invokes, by default, the provisions of the UCC. General Statutes § 42-83. Accordingly, we concur in the trial court's ruling that the defendant's resale was commercially reasonable.

### B

An instalment creditor, after repossession and resale, must give consumer debtors a notice of distribution of proceeds that complies with RISFA. The notice in this case advised the plaintiffs that their car had been sold for $2000, and that this amount had been reduced by $200 as repossession costs, $97 as expenses, for cleaning and storage, leaving a balance of $1703 as the proceeds of the sale calculated according to § 42-98 (e). The notice then invoked § 42-98 (g) as authority for whatever deficiency might be due the defendant: "If there was a deficiency, as defined in section 42-98 (g) of the Connecticut General Statutes, you will be held liable for paying such deficiency in an amount equal to that which is provided for in said statutes." The notice then indicated a deficiency, payable by the customer, in the amount of $4432.24. The trial court, although it inferentially found that the notice had complied with § 42-98 (e), also found that the fair cash *retail* market value of the car was $3000. Accordingly, it reduced the amount of the defendant's deficiency claim by the amount of $1200, representing $1000 for the increased value of the car and $200 for the unproved repossession cost, leading to a deficiency judgment of $3232.24.

The plaintiffs contend that RISFA requires an instalment creditor, in its notice of distribution of proceeds, to inform a consumer debtor of "either the amount paid

for such goods at [resale] or the fair cash *retail* market value of the goods at the time of repossession, whichever is greater . . . ." (Emphasis added.) General Statutes § 42-98 (d). This part of the subsection, in stating what the proceeds of the resale "shall be considered to be" was, however, designed to describe, substantively, how the creditor proposes to allocate resale proceeds. Although the subsection elsewhere requires such a creditor to give *pre-resale* notice, it does not prescribe the terms of *post-resale* notice. Post-resale notices are governed instead by § 42-98 (e), which merely requires an instalment creditor, "[w]ithin thirty days of the resale . . . [to] give the retail buyer a written statement itemizing the disposition of the proceeds."

In our view, § 42-98, when read in its entirety, permits a creditor to submit a notice of distribution that accurately reflects a good faith reasonable estimate of costs and receipts, without having to anticipate what a trier of fact may subsequently determine the fair cash retail value of the repossessed goods to have been. This construction finds support not only in subsection (e) but also in the provisions of subsections (f) and (g). These subsections limit an instalment creditor's substantive recovery by requiring the repossessed goods to be valued, as a minimum, in accordance with the statutory definition of fair market value. This statutory scheme, like the final sentence of § 42-98 (d), contemplates the regulation of the recovery of deficiency *judgments* rather than the regulation of deficiency *notices*. The trial court therefore correctly ruled that the defendant's notice of disposition did not violate RISFA.

III

The plaintiffs finally assert claims for relief under two additional statutes, the Creditors' Collection Practices Act (CCPA) and the Connecticut Unfair Trade Prac-

tices Act (CUTPA). The trial court, with little elaboration, found no violation of either statute. It stated, however, that it found nothing unfair, deceptive, or oppressive, and no violation of the public policy of the state, in the conduct of the defendant in this case.

The plaintiffs raise two issues under CCPA, General Statutes §§ 36-243a through 36-243c and § 36-243c-6*l* of the Regulations of Connecticut State Agencies, which we decline to address because neither one is properly before us. First, the plaintiffs advert generally to the statute as having been violated by the documents sent them by the defendant in this case. They fail to offer any reasoned explanation why any of these documents should be deemed, despite the trial court's contrary findings, to fall within the ambit of § 36-243b, which prohibits a creditor's use of "any abusive, harassing, fraudulent, deceptive or misleading representation, device or practice to collect or attempt to collect a debt." This issue is not sufficiently briefed to warrant our consideration. *Cohen* v. *Security Title & Guaranty Co.,* 212 Conn. 436, 436–37 n.1, 562 A.2d 510 (1989); *Aillon* v. *Meachum,* 211 Conn. 352, 356 n.4, 559 A.2d 206 (1989). Second, the plaintiffs complain of the defendant's alleged noncompliance with a notice requirement contained in § 36-243c-6*l* of the Regulations of Connecticut State Agencies, under which debtors must be informed that this is an effort "to collect a debt and that any information obtained will be used for that purpose." The defendant correctly notes that the plaintiffs abandoned this issue before trial by failing properly to brief it either in connection with their motion for summary judgment or thereafter.

The plaintiffs' CUTPA claims; General Statutes §§ 42-110a through 42-110q; are only cognizable if CUTPA applies to banks and banking activities. We need not resolve that issue, however, because the plain-

tiffs have premised their claims on the defendant's alleged violations of the UCC, RISFA and CCPA. The only documented noncompliance with these statutes on the present record is the defendant's inadvertent failure to provide the plaintiffs a fully accurate redemption notice as required by § 42-98 (c). For the same reason that we have concluded that this deviation from the statutory requirement does not warrant the imposition of § 42-98 (i) sanctions, we hold that it does not automatically constitute a CUTPA violation. In light of the trial court's finding that the defendant's conduct was not in fact unfair, deceptive, or oppressive, we conclude that the plaintiffs have not established their CUTPA claims.

The judgment is reversed in part and the case is remanded with direction to correct the judgment by subtracting from the defendant's recovery on its counterclaim the amount of $97 for the expenses of storage.

In this opinion the other justices concurred.