[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE' MOTION FOR SUMMARY JUDGMENT AS TO, INTER ALIA, COMMERCIAL REASONABLENESS IN LIQUIDATION OF REPOSSESSED INVENTORY
Plaintiff Dime Savings Bank of New York, F.S.B. (Dime), has filed a two count complaint against the defendant, Grossman Acquisition Company d/b/a/ Shoreline Isuzu (Grossman), and several individual defendants; namely, Joseph Salinardi, Catherine Salinardi and John Cassesse[1]
(guarantors), alleging in count one breach of a credit and security agreement against Grossman, and alleging in count two breach of a guarantee agreement against the guarantors. On December 23, 1999. the guarantors filed a counterclaim against the Dime, alleging abuse of process in connection with the Dime's petition for a prejudgment remedy. Presently before the court is plaintiff Dime's motion for summary judgment, filed on June 16, 2000, as to counts one and two of the complaint and its motion for summary judgment as to the guarantors' counterclaim for abuse of process.
From the pleadings, affidavits and documents submitted the court finds that the essential facts set out herein are not disputed. The Dime advanced approximately $1.9 million to Grossman to finance the purchase of automobiles for resale. This advancement was made pursuant to a floor plan credit and security agreement (financing agreement), dated June 28, 1995, which was originally entered into between Grossman and Citibank. The terms of the agreement allowed Grossman to use Citibank's capital to CT Page 15836 purchase vehicles for resale at a later date and provided that once Grossman sold a vehicle it was to return the full amount of capital it borrowed from Citibank to finance that vehicle. The financing agreement was assigned to the Dime by Citibank on August 1, 1999.
The guarantors signed an agreement on June 28, 1999, whereby they each agreed to be personally liable for the full amount of Grossman's obligations to the Dime.[2] This agreement provides that the guarantors are liable for the full amount of Grossman's debt, in the event of a default, regardless of whether the Dime first sought repayment from Grossman or attempted to liquidate any collateral which may exist.
The Dime conducted a routine inventory of Grossman's inventory in September. 1999, and discovered, on two separate occasions, that Grossman was selling automobiles and not returning the money which it had borrowed. On September 21, 1999, the Dime demanded full payment of the outstanding debt from Grossman and the guarantors. It is undisputed that this debt has remained unpaid. The Dime commenced this action on October 1, 1999, to recover damages under the financing and guarantee agreements.
On October 23, 1999, the Dime repossessed the remaining automobiles on Grossman's lot. The Dime has submitted evidence that it was denied access to the inside of the dealership and therefore, could not repossess the items of miscellaneous collateral, namely, parts, lifts, tools and office furniture, which were kept inside the dealership.
After repossession of the vehicles, the Dime sold some of the vehicles back to American Isuzu Motors. These vehicles were returned to American Isuzu Motors pursuant to an agreement that American Isuzu Motors had with Citibank.
The Dime has submitted further evidence supporting its position that on November 24, 1999, David R. Maltz Co., Inc. (Maltz), certified auctioneers, gave notice to Grossman and the guarantors pursuant to the financing and guarantee agreements that thirty-seven of the repossessed vehicles would be sold on December 7, 1999, at a public auction, to the highest bidder. The auction was held as scheduled and all thirty-seven vehicles seized from Grossman's inventory were sold. The Dime later repossessed one additional vehicle, which was also sold at a public auction by Maltz after notice to Grossman and the guarantors.
The Dime later acquired the miscellaneous collateral contained in the dealership. As of the date of the hearing on the summary judgment motion, September 5, 2000, the Dime had not effectuated a sale of this additional collateral. CT Page 15837
As stated earlier plaintiff Dime seeks a finding in summary judgment on count one that Grossman Acquisition Company has breached the floor plan and security agreement and is liable for the financial obligations thereunder, together with associated reasonable expenses. Plaintiff Dime further seeks a finding in summary judgment on court two that the personal guarantors have breached their guarantee, and that they are liable therefor. Plaintiff Dime also seeks a finding in summary judgment on the defendants' counterclaim as to abuse of process.
When a motion for summary judgment is filed the rule of court provides that "[t]he judgment sought [therein] shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Conn. Prac. Bk. § 17-49. ". . . [T]he party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with evidence disclosing the existence of such an issue." (Internal quotation marks omitted.) Home Ins. Co. v.Aetna Life Casualty Co., 235 Conn. 185, 202, 663 A.2d 1001 (1995); see also Zeller v. Consolini, 59 Conn. App. 545, 564, 758 A.2d 376 (2000).
Grossman and the guarantors claim that summary judgment is not proper because genuine issues of material fact exist with respect to their third and fourth special defenses, respectively, that the Dime failed to mitigate its damages by failing to seize and dispose properly of certain collateral at the dealership, and that the Dime failed to collect and dispose of the seized automobiles in a commercially reasonable manner.[3]
This argument as to the proper assessment of damages does not forbid consideration of summary judgment as to liability.
"A summary judgment motion, interlocutory in character, may be rendered on the issue of liability alone, although there is a genuine issue as to damages. In such a case the judicial authority shall order an immediate hearing before a judge trial referee, before the court, or before a jury, whichever may be proper, to determine the amount of the damages." (Internal quotation marks omitted.) Ariel v. Blechman, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 158694 (April 13, 2000, D'Andrea, J.); Arrowhead by the Lake Assn., Inc. v.Arrowhead by the Lake, Inc., Superior Court, judicial district of Waterbury, Docket No. 128458 (January 21, 1999, West, J.); see also Practice Book § 17-50.[4]
In the present case, the court finds that the affidavits and documents presented establish that Grossman defaulted on its obligation to the CT Page 15838 Dime, and that Grossman and the guarantors are liable therefor.
 Defendants' Claims as to Damages
On the issue of damages the defendants principally argue that (1) the sale of the seized automobiles was commercially unreasonable, (2) the Dime undervalued the parts, equipment and furniture seized from the dealership, and (3) the Dime's accounting fails to include all of the collateral from the dealership in which it has a security interest. In support of these arguments, the defendants submit the affidavit of Joseph Salinardi, one of the defendant guarantors who was also involved in the operation of the dealership.
The Dime objects to the use of Joseph Salinardi's affidavit to create a material issue of fact. The Dime argues that Joseph Salinardi would not qualify as an expert witness and therefore his affidavit cannot be relied on to support matters he would not be able to testify about at trial.
The statements in Joseph Salinardi's affidavit reveal that he has worked in sales at automobile dealerships for over twenty years and that he was the president of Grossman Acquisition Company for all times relevant herein. (Affidavit of Joseph Salinardi, July 5, 2000 [Salinardi Affidavit], ¶¶ 4-6.) The affidavit also affirms that the statements in the affidavit are based on his personal knowledge. (Salinardi Affidavit, ¶ 2.) From Joseph Salinardi's involvement with Shoreline Isuzu and other automobile dealerships over the course of the past twenty years, it is a reasonable inference that he has personal knowledge relating to the auction of automobiles in the state of Connecticut. As there is nothing in the affidavit which suggest that Joseph Salinardi is seeking to present facts about information which is outside the scope of his personal knowledge and because the Dime has not shown that the auctioning of automobiles is such a complex issue that the defendants would be seeking to have Joseph Salinardi testify as an expert, it is proper for the court to consider the facts asserted therein.
The Dime also argues that the asserted facts in the Joseph Salinardi affidavit are not credible because he is one of the guarantor defendants in this action. The issue of a party's credibility is appropriately left to the trier hearing live testimony. Tryon v. North Branford,58 Conn. App. 702, 717, 755 A.2d 317 (2000).
The issue before the court is whether Joseph Salinardi's affidavit creates a material issue of fact regarding the amount of damages claimed by the Dime. With regard to the commercial reasonableness of the auction, the Dime admits that it used Maltz, located in Plainview, New York, to effectuate the sale of the vehicles it repossessed from CT Page 15839 Grossman. The Dime also admits that the auction was held in New York because that is where the Dime typically sends its repossessed automobiles for auction. The Dime also concedes that it does not do a lot of work in Connecticut.
Joseph Salinardi attests that Southern Auto Sales, an auction house in Windsor Locks, Connecticut, is the premier and largest automobile action house used by dealers in Connecticut. (Salinardi Affidavit, ¶¶ 8-9.) Joseph Salinardi also attests that it would have cost about fifty dollars to transport a vehicle to Southern Auto Sales from anywhere in Connecticut and that there is no charge for the storage of a vehicle at Southern Auto Sales. (Salinardi Affidavit, ¶¶ 13-14.)
When judging the commercial reasonableness of a sale of collateral by a secured creditor the court is governed by General Statutes "§ 42a-9-504
(3), which requires that every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable." (Internal quotation marks omitted.) Gaynor v. Union Trust Co.,216 Conn. 458, 477, 582 A.2d 190 (1990) (discussing the commercial reasonableness of the resale of a consumer vehicle after repossession). In Connecticut Bank Trust Co. v. Incendy, 207 Conn. 15, 28, 540 A.2d 32
(1988), the court stated that proof of commercial reasonableness "requires evidence of such things as the amount of advertising done, the number of people contacted, normal commercial practices in disposing of the particular collateral, the length of time between the repossession and the sale, whether any deterioration in the collateral has occurred, the number of bids received, and the price obtained."[5] The determination of whether a sale is commercially reasonable is ordinarily a question to be determined by the trier of fact. Gaynor v. Union TrustCo., supra, 216 Conn. 479.
Although it is not expressly stated, because the court is bound to "view the evidence in the light most favorable to the nonmoving party";Connecticut Bank Trust Co. v. Carriage Lane Associates, 219 Conn. 772,781, 595 A.2d 334 (1991); it can be inferred that the basis of Joseph Salinardi's personal knowledge of auctions was gained as president of Grossman and from his twenty plus years in the automobile dealership business. (Salinardi Affidavit, ¶¶ 4-6.) Thus, Joseph Salinardi's affidavit suggests that it would have cost less to transport the vehicles and store them at Southern Auto Sales than at Maltz. This creates a material issue of fact regarding the commercial reasonableness of the sale at Maltz and the cost associated with it because it suggests that the Dime may not have acted to dispose of the collateral in a manner where "every aspect of the disposition including the method, manner, time, place and terms [was] commercially reasonable." General Statutes § 42a-9-504 (3). CT Page 15840
Further, Joseph Salinardi attests that he is familiar with the value of the parts, equipment and furniture located at the dealership based on his involvement in their purchase, maintenance and replacement. He attests that the total value of this collateral is significantly more than the Dime's appraisal represents. In addition, Joseph Salinardi gives specific examples of several items of collateral from the dealership not included in the Dime's appraisal.
The court finds that the facts asserted in the Salinardi affidavit are sufficient to establish that genuine issues of material fact exist with regard to the amount of damages that the Dime is entitled to recover.
Lastly, the Dime moves for summary judgment as to the defendants' counterclaim for abuse of process. The court finds that the defendants have not asserted a factual or evidentiary basis to support their claim that the Dime has committed an abuse of process. "[T]he gist of the tort is . . . misusing, or misapplying, process justified in itself for an end other than that which it was designed to accomplish." (Internal quotation marks omitted.) Lewis Truck Trailer, Inc. v. Jandreau, 11 Conn. App. 168,170-71, 526 A.2d 532 (1987). While the defendants have claimed that the Dime was fully secured without a prejudgment remedy, they have not produced any evidence which suggests that the Dime sought the remedy for some impermissible purpose.
 ORDERS
For the foregoing reasons, the court issues the following orders:
 1) Plaintiff Dime's Motion for Summary Judgment as to liability on Counts One and Two of its Complaint is granted.
 2) Plaintiff Dime's Motion for Summary Judgment on the defendant's Counterclaim for Abuse of Process is granted.
3) Hearing on issue of damages.
The plaintiff shall claim this matter for a hearing in damages for the purpose of establishing the proper amount of its damages.
Clarance J. Jones, Judge