ANA VELAZQUEZ *v.* MARINE MIDLAND AUTOMOTIVE FINANCIAL CORPORATION
(9034)

DUPONT, C. J., SPALLONE and O'CONNELL, Js.

Argued December 3, 1990—decision released April 16, 1991

*Joanne S. Faulkner,* for the appellant (plaintiff).

*Rochelle S. Wood,* with whom, on the brief, was *Penny Q. Seaman,* for the appellee (defendant).

O'CONNELL, J. The plaintiff brought an action against the defendant, Marine Midland Automotive Financial Corporation (Midland), seeking statutory damages after Midland repossessed her automobile. The court determined that the plaintiff was not entitled to damages, and the plaintiff subsequently filed this appeal. The plaintiff claims that the court improperly (1) granted Midland a continuance to introduce the originals of certain documents requested in discovery by the plaintiff, (2) held that Midland had a right to repossess the car without giv-

ing her written notice that late payments would no longer be accepted, and (3) held that Midland's actions after repossession fully complied with the Retail Instalment Sales Financing Act (RISFA); General Statutes § 42-83 et seq.; and the Uniform Commercial Code (UCC). General Statutes § 42a-9-507. We affirm the judgment of the trial court.

The following facts are relevant. On March 31, 1986, the plaintiff purchased a used 1983 Pontiac from a Connecticut car dealer. The plaintiff financed most of the purchase price with the dealer pursuant to a retail installment sales contract (contract). The dealer then assigned the contract to Midland, pursuant to a motor vehicle dealer's agreement (repurchase agreement). Under this repurchase agreement, the dealer was obligated to pay Midland the balance due under the contract if the plaintiff defaulted and the car was repossessed.

From the start of the relationship, the plaintiff was repeatedly late with her payments. Midland made numerous attempts to arrange for timely payments, and assessed penalty charges for late payments. Between the time the first payment was due, and the repossession of the automobile, the plaintiff was thirty days past due six times, sixty days past due three times, and ninety days past due once.

When the plaintiff was two months in arrears, she promised Midland that she would make her account current by March 27, 1987. The payment was not made. On April 7, 1987, the plaintiff promised to pay by April 9, 1987. Again no payment was made. On April 10, 1987, Midland sent the plaintiff a letter asking her to contact Midland immediately because her account was delinquent, and stating that if the default was not cured the vehicle would be repossessed. Repossession occurred on April 14, 1987, and, on April 15,

1987, Midland sent the plaintiff a formal notice of repossession. This notice advised the plaintiff of her right to redeem the car by paying the repossession charges, and either the unaccelerated or accelerated balance by April 30, 1987, or the car would be sold at a private sale.[1]

On April 15, 1987, Midland reassigned the contract and transferred the vehicle to the dealer pursuant to the repurchase agreement and subject to the plaintiff's right of redemption. In June of 1987, the dealer paid Midland the accelerated balance set forth in the repossession notice, less an insurance payment that Midland received for physical damage to the automobile.

The dealer's payment to Midland did not account for a payment received by Midland after repossession, nor did it reflect interest charges accrued between the date of repossession and the time the dealer paid the contract balance. The net effect was that the dealer paid $56.96 more than the actual accelerated balance. This overpayment was eventually refunded to the dealer.

On the first day of trial, the court granted Midland a continuance so that it could produce the original repurchase agreement. This agreement, along with a five page nonrecourse contract, was introduced into evidence when the trial resumed. The plaintiff unsuccessfully sought to have these documents excluded from the trial.

I

The plaintiff argues that the court improperly granted Midland a continuance to obtain the original repurchase agreement when the plaintiff objected to the admission of copies into evidence. It is undisputed that Midland failed to comply with a pretrial discov-

---

[1] The unaccelerated balance is the amount required to make the account current. The accelerated balance is the total amount due on the loan.

ery order to produce the original repurchase agreement and several other documents and that the plaintiff was diligent in pressing for compliance with the discovery order. Although we do not condone any flaunting of the rules of discovery, we do not agree with the plaintiff that the nondisclosure automatically required the exclusion of these documents from evidence.

The trial court determined that it would be an injustice to exclude these documents from evidence. Instead of exclusion, the trial court offered the plaintiff a continuance, and ordered Midland to pay $1750 in counsel fees to the plaintiff for the delay. The plaintiff refused the continuance but accepted the $1750.

The appropriateness of a sanction is within the discretion of the court. *Sturdivant* v. *Yale-New Haven Hospital,* 2 Conn. App. 103, 107, 476 A.2d 1074 (1984). "Factors to be considered in determining an appropriate sanction are (1) the cause of the [party's] failure to respond . . . that is, whether it is due to the inability rather than the willfulness, bad faith or fault of the deponent . . . (2) the degree of prejudice suffered by the opposing party, which in turn may depend on the importance of the information requested to that party's case; and (3) which of the available sanctions would, under the particular circumstances, be an appropriate response to the disobedient party's conduct." (Citations omitted.) *Pavlinko* v. *Yale-New Haven Hospital,* 192 Conn. 138, 144, 470 A.2d 246 (1984).

Although Midland was at fault for not producing the repurchase agreement earlier, the plaintiff was not prejudiced by this action because Midland consistently represented to her that the transfer of the car to the dealer was made pursuant to such an agreement. The plaintiff's claim of prejudice is further diminished by the fact that she rejected the court's offer of a continuance after Midland produced the original agreement.

"The determinative question for an appellate court is not whether it would have imposed a similar sanction but whether the trial court could reasonably conclude as it did given the facts presented." *Mulrooney* v. *Wambolt*, 215 Conn. 211, 222, 575 A.2d 996 (1990). Under the circumstances of this case, one appropriate response to Midland's conduct was to award the plaintiff counsel fees for an extra day of trial, and to offer the plaintiff a continuance for any necessary preparation required because of the admission of the agreement.[2]

## II

The plaintiff next claims that because Midland repeatedly demanded and accepted late payments it lost the right to repossess the vehicle without first giving the plaintiff written notice that the payment schedule would be strictly enforced and that late payments would no longer be tolerated. The gravamen of the plaintiff's argument is that Midland should not be permitted to invoke a formal provision of the agreement that the plaintiff reasonably believed would not be enforced.

Subsequent to the trial of the present case, our Supreme Court in *Gaynor* v. *Union Trust Co.*, 216 Conn. 458, 468–70, 582 A.2d 190 (1990), held that a creditor's toleration of one or more defaults does not

---

[2] The plaintiff also argues that the trial court should have excluded the documents (1) because the repurchase agreement contradicted the defendant's admission of an allegation in her complaint, and (2) because the defendant did not plead the repurchase agreement as a special defense. Review is unwarranted for these claims because the plaintiff has failed to adhere to the rules governing appellate review. These claims constitute mere bare assertions with no legal analysis. She has neglected to research the law or to formulate any reasoned legal analysis with respect to these claims. See *State* v. *Smith*, 10 Conn. App. 624, 635, 525 A.2d 116, cert. denied, 204 Conn. 809, 528 A.2d 1156 (1987). Under these circumstances, the defendant's claims are deemed abandoned and review denied. *Aillon* v. *Meachum*, 211 Conn. 352, 356 n.4, 559 A.2d 206 (1989); *State* v. *Smith*, supra; *State* v. *Knighton*, 7 Conn. App. 223, 226, 508 A.2d 772 (1986).

require a creditor to indulge subsequent late payments. In *Gaynor,* as here, the creditor had diligently pressed a chronically delinquent debtor and accepted whatever payments were forthcoming. Similarly, the trial courts in each case found that the repossessions were precipitated by the debtors' default after specific promises of payment and that the debtors were not lulled into believing that the creditors intended to relinquish the right to receive timely payments or to repossess the collateral upon a failure to pay in accordance with the contract.

In addition to the contractual right to repossess the automobile, the court in the present case also found that Midland had a statutory right to repossess the car without notice when the plaintiff defaulted. General Statutes § 42-98 (c), a part of RISFA, provides in relevant part: "If the holder of such [installment loan] contract does not give the notice of intention to retake . . . he shall retain such goods for fifteen days after the retaking within the state in which they were located when retaken. During such period the retail buyer . . . may redeem such goods . . . ." The court found that Midland fully complied with this statute when it repossessed the plaintiff's car. Accordingly, we conclude that the trial court properly determined that Midland had both a statutory as well as contractual right to repossess the plaintiff's car without first giving notice that late payments were no longer going to be tolerated.

### III

The plaintiff next claims that the notice sent by Midland after repossessing her car failed to satisfy the UCC and RISFA. She contends that the postrepossession notice misrepresented her redemption rights and inaccurately stated her accelerated balance. The plaintiff further maintains that Midland failed to send her notice

of the sale proceeds as required by RISFA. We reject the plaintiff's arguments.

## A

Midland's postrepossession letter stated that the plaintiff could redeem her automobile until April 30, 1987.[3] The plaintiff asserts that this notice misrepresented her right of redemption because the UCC, General Statutes § 42a-9-506, provides that a debtor can redeem at any time before the secured party disposes of the collateral.[4] The car was sold by the dealer on December 8, 1987.

---

[3] The April 15, 1987, letter read as follows:

"Your 1983 Pontiac has been repossessed by Marine Midland Consumer Credit Corporation. You are hereby notified that the vehicle is presently being held at Berlin, CT and can be redeemed at that location until 4/30/87. The estimated costs for redemption of your vehicle are listed below. If you do not redeem the above vehicle within the prescribed time period, at the address above, the vehicle will be sold at a private sale.

"You have the right to redeem the collateral by either paying the balance in full plus the expenses of retaking or by paying the past due installments plus the expenses of retaking. Expenses of retaking may include, where applicable, towing, storage, etc. By paying one of the following total dollar amounts, in certified funds, you may redeem the vehicle.

| Balance in Full | $ 7537.15 | Past due Installments | $ 856.70 |
| Estimated Expenses | $ 432.50 | Estimated Expenses | $ 432.50 |
| Total | $7969.65 | Total | $1289.20 |

"This amount which is subject to change as additional payments become due and/or storage charges continue to accrue, must be paid prior to the date set above. You will be notified of sale proceeds. Any personal property present in the collateral at the time of repossession is being held in storage for you and must be claimed within twenty (20) days.

"Your prompt response can save you additional expense. In addition to the costs listed above, you should be aware that a repossession sale may not realize a sufficient amount to satisfy the obligation in full. If the net proceeds at the sale, after expenses, do not equal your unpaid balance, you may be held liable for the deficiency.

"We urge you to act promptly."

[4] General Statutes § 42a-9-506 provides: "At any time before the secured party has disposed of collateral or entered into a contract for its disposition under section 42a-9-504 or before the obligation has been discharged under section 42a-9-505 (2) the debtor or any other secured party may unless

This apparent contradiction between the UCC requirements, and RISFA § 42-98 (c) was addressed in *Gaynor* v. *Union Trust Co.*, supra, 472–73. The *Gaynor* court recognized that although the UCC requires reasonable notification from a secured creditor as to the disposition of a debtor's property, the UCC's redemption section, General Statutes § 42a-9-506, does not impose any further notice requirements on a secured party who complies with RISFA's redemption statute. "These notice requirements . . . do not envisage that the secured creditor must provide specific guidance for the unlikely event that a consumer debtor who could not redeem his property by paying his unaccelerated debt at the time of repossession would be in a position, shortly thereafter, to repay his larger accelerated debt." Id., 473. Thus, we conclude that the defendant did not misrepresent the plaintiff's redemption rights in the April 15, 1987 notice.

B

In addition, the trial court properly found that Midland's notice fairly and accurately stated the accelerated and unaccelerated sums required to redeem her car. The plaintiff asserts that the accelerated balance was incorrect because it failed to account for any rebate of credit insurance. To support her argument, the plaintiff contends that General Statutes (Rev. to 1987) § 38-256 (b) (now § 38a-652) required Midland to rebate the credit insurance from the accelerated payoff figure. Section 38a-652 (b) provides in relevant part: "*[I]n the event of termination* of the insurance prior to the scheduled maturity date of the indebtedness, any

---

otherwise agreed in writing after default redeem the collateral by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding and preparing the collateral for disposition, in arranging for the sale, and to the extent provided in the agreement and not prohibited by law, his reasonable attorney's fees and legal expenses."

refund of an amount paid by the debtor on insurance shall be paid or credited promptly to the person entitled thereto . . . ." (Emphasis added.) This statute is not relevant because the insurance was not terminated because the contract was simply transferred to the dealer and the loan was not closed. If a credit insurance rebate was due it was the responsibility of the dealer to whom the collateral was transferred to arrange for the rebate.

The plaintiff also asserts that her contract with Midland required the accelerated balance to be reduced by certain insurance credits. The pertinent clause in the contract reads: "If I do default, you may, without telling me, declare the entire unpaid balance due at once. You can then require me to pay that balance immediately (but you must give me the same credits and adjustments as you would if I prepaid in full). Then, if I don't pay you immediately, I will pay you interest at the highest lawful rate figured on the unpaid balances (after you give me the agreed credits and adjustments)." This clause pertains to the parties' rights once the full unpaid balance of the debt is declared due after a default.

The debt was not declared due in Midland's notice of April 15, 1987. That notice only required the plaintiff to redeem her car by April 30, 1987, by paying either her balance in full plus the costs of retaking *or* the past due installments plus retaking expenses. If the plaintiff elected to pay the accelerated amount, General Statutes § 42-96 would have required Midland to credit her balance. When Midland sent the notice, the statutory and contractual duty to credit the accelerated balance had not become operative. The accelerated balance became due only after the redemption deadline passed, and the plaintiff failed to redeem.

The plaintiff also claims that Midland's notice contained an inaccurate payoff figure because it failed to

account to her for a surplus. This argument is without merit because the surplus alleged in the plaintiff's brief quickly disappears once the repossession costs are added to the accelerated balance. In fact, the only surplus arose from an insurance payment to Midland for property damage to the vehicle. Midland did not receive this payment until after the repossession notice was sent to the plaintiff, and, therefore, could not be expected to account for this surplus at the time the notice was sent.

## C

The plaintiff also argues that Midland failed to satisfy RISFA § 42-98 (e) which requires that, within thirty days of the resale, the holder of the contract shall give the retail buyer a written statement itemizing the disposition of the proceeds. She maintains that the transfer of her automobile from Midland to the dealer constituted a sale, and that Midland's failure to give her notice of the proceeds of this sale was a statutory violation.

The trial court concluded that the transfer of the vehicle was not a sale for purposes of § 42a-9-504 of the UCC. Section 42a-9-504 (5) expressly provides in relevant part: "A person who is liable to a secured party under a . . . repurchase agreement or the like and who receives a transfer of collateral from the secured party . . . has thereafter the rights and duties of the secured party. *Such a transfer of collateral is not a sale or disposition of the collateral under this article.*" (Emphasis added.) According to this statute, Midland relinquished to the dealer its statutory rights and obligations as a secured creditor. The plaintiff's attempt to characterize this transaction as a sale requiring notice is not consistent with the plain meaning of the statute.[5] Because this transfer was not a sale under the

[5] Although there exists no controlling Connecticut authority, other jurisdictions have concluded that a transfer of repossessed collateral from a

UCC, Midland was not required to send the plaintiff notice of the proceeds it received from the dealer.

Ironically, the reason for not labeling this transaction a sale is to protect the debtor from liability for a deficiency claim by the secured creditor. Section 42a-9-504 (5) ensures that the value of repossessed collateral is measured by a bona fide sale, and not by an artificial value, usually the balance due on the debtor's contract, set by a repurchase agreement between a dealer and a finance company. See *Reeves* v. *Associates Financial Services Co.*, 197 Neb. 107, 115, 247 N.W.2d 434 (1976). The trial court was correct in finding that the transfer of the repossessed vehicle was not a sale for purposes of the UCC.

This same analysis also defeats the plaintiff's claim that Midland had a duty to notify her of this transaction under § 42-98 (e) of RISFA. Section 42-98 (e) provides in pertinent part: "Within thirty days of the resale, the holder of the contract shall give the retail buyer a written statement itemizing the disposition of the proceeds." Because the transfer of a car between Midland and the dealer was not a sale, we conclude that Midland had no duty under RISFA to notify the plaintiff of the transfer. Therefore, we agree with the trial court that it was the dealer who had the duty to notify the plaintiff of any proceeds from the eventual sale of the vehicle pursuant to §§ 42a-9-504 (3) and 42-98 (e). The dealer is not, however, a party to this action, nor does the plaintiff, as expressly stated in her brief, seek any statutory damages from the dealer. Accordingly,

---

financing company to a seller, pursuant to a repurchase agreement, is not a sale or disposition of the collateral under the Uniform Commercial Code. *Community Management Assn., Inc.* v. *Tousley*, 32 Colo. App. 33, 40, 505 P.2d 1314 (1976); *Stoppi* v. *Wilmington Trust Co.*, 518 A.2d 82, 85 (Del. 1986); *Reeves* v. *Associates Financial Services Co.*, 197 Neb. 107, 115–16 247 N.W.2d 434 (1976); *Jefferson Credit Corporation* v. *Marcano*, 60 Misc. 2d 138, 143, 302 N.Y.S.2d 390 (1969).

we conclude that Midland was not required to give the plaintiff notice of any sale proceeds under RISFA.

Additionally, the plaintiff's failure to prove that Midland violated any provisions of the UCC or RISFA mandates that this court reject the plaintiff's Connecticut Unfair Trade Practice claims. *Gaynor* v. *Union Trust Co.*, supra, 482–83. This result is further supported by the trial court's finding that Midland never defrauded, prejudiced, misled, deceived or unfairly dealt with the plaintiff.

In view of our disposition of this appeal, no other claims need to be addressed.

The judgment is affirmed.

In this opinion the other judges concurred.