[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Application to confirm an underinsured motorist arbitration award filed August 13, 1991 D.N. 104287. The defendants had filed an application to vacate the award July 18, 1991 D.N. 104037.
The parties appeared for oral argument on September 3, 1991.
For purposes of discussion herein, the court shall refer to Liberty Mutual Insurance Co. as the "Respondent" and Barry Manville et al as the "Claimant" since they were so designated when the arbitration hearing was held.
The Respondent issued an automobile insurance policy to the Claimant. Liability and uninsured/underinsured coverage was in the amount of $100,000.00. The policyholders elected to make periodic payments of the premium due under the policy. The policy was canceled for nonpayment of premium, effective Nov. 27, 1988. CT Page 9361 On Dec. 3, 1988, Shelley Manville, a covered person under the policy, was involved in an automobile accident. Liberty Mutual denied coverage, due to the fact that the policy had been canceled for nonpayment of premium.
The Claimants, through their attorney, made an application to compel arbitration. The matter was heard before the court, Kulawiz, J., and a judgment issued on March 2, 1990, compelling the parties to arbitrate all issues, including the coverage issue. Thereafter, the parties selected an arbitration panel. It was agreed that the panel would decide the coverage issues first; evidence was offered as to this issue. The majority of the panel found that the policy had been duly cancelled.
STANDARD OF REVIEW
The standard of review of uninsured/underinsured motorist proceedings is clear following the recent Supreme Court case of Chmielewski v. Aetna Casualty Surety Co., 218 Conn. 646 (1991).
As to factual findings of the arbitration panel, the Supreme Court stated the following:
 "We perceive no legislative barrier, like that existing under Lemon Law II, to reading Sect. 38-175c so as to provide a substantial evidence standard of judicial review of factual findings, and we construe Sect. 38-175c and 52-418
to incorporate that standard [Footnote 15] in order to `implement the legislature's purpose in a manner that is both effective and constitutional . . .'.Id., 96. Furthermore, in order to ensure that the court is able to undertake that review effectively, we construe Sect. 38-175c to incorporate a requirement that a record of the arbitration proceedings be preserved and made available to the court in connection with any such review."
Footnote 15 referred to further explains the "substantial evidence test":
 "[15.] The substantial evidence test for judicial review of factual findings provides as follows: `Judicial review of an administrative agency decision CT Page 9362 requires a court to determine whether there is substantial evidence in the administrative record to support the administrative agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable.' Connecticut Light Power Co. v. DPUC, 216 Conn. 627, 639, 583 A.2d 906 (1990). `Substantial evidence' will be found to exist if the administrative record supplies a substantial basis of fact from which the court reasonably can infer the fact in issue. Id. 639-40.
 This standard of review provides less room for judicial scrutiny than do the `clearly erroneous' or `weight of the evidence' rules. Connecticut Building Wrecking Co. v. Carothers, 218 Conn. 580, 693 A.2d (1991). `In determining whether an administrative finding is supported by `substantial evidence', a court must defer to the agency's right to believe or disbelieve the evidence presented by any witness, even an expert, in whole or in part . . .' Briggs v. State Employees Retirement Commission, 210 Conn. 214, 217, 554 A.2d 292 (1989); see also Connecticut Light 
Power Co. v. DPUC, supra, 640.
The court, however, retains a "de novo" standard of review as to issues of law.
The respondent points out the following facts in its memorandum dated September 16, 1991 in support of the majority decision of the arbitration proceeding.
The Claimant heard evidence on the issue of late payments in the past.
The record establishes that the insurance policy, under which this claim was made, was cancelled for non payment of premiums on November 27, 1988, and that the accident for which coverage was claimed occurred on December 3, 1988. There is no dispute that the policy was duly cancelled in accordance with the applicable Connecticut General Statute (Section 38-175f).
The Claimant asserted that the Respondent is estopped from denying coverage because it established a course of conduct of CT Page 9363 accepting payments after prior cancellation notices of policies issued by the Respondent to the Claimant.
Mrs. Manville testified that she received cancellation notices on approximately five prior occasions. (T., Vol. 2, "Manville", p. 13). On those prior occasions, she duly made the payments that were due. She made the payments in accordance with the bills that were sent to her on the prior occasions, and that she was never without insurance.
The Respondent argues (Memorandum September 16, 1991 at page 6).
 "The cancellation notice in this case for example mailed on November 7, 1988, informed the policy holder that payment in full would be accepted up to November 27, 1988 the cancellation date. However, an attempted payment after the cancellation date and after an accident had occurred presents a far different situation."
The arbitration panel made the following findings in their decision June 19, 1991 which findings are supported in the record. The panel's majority found that even the grace period had expired when the last payment was received and credited. The panel further found that the statute for notice of cancellation (Section 38-175f of the Connecticut General Statutes) had been fully complied with. The panel in their decision stated that strict compliance by an insurer for cancellation was complied with as required by law. DiProspero v. Nationwide Mutual Fire Ins. Co.,30 Conn. Sup. 291, 297 311 A.2d 561 (1973).
The panel further found from the plain language of the contract that notice of cancellation for nonpayment of premiums was given.
The Claimant argues again that the respondent by accepting late payments continues coverage. The panel found "that there was no evidence that prior to 1988, any late payments were made after coverage had been cancelled or had the effect of reinstating a previously cancelled policy. An insurer's acceptance of late payment on prior occasions does not require it to accept and provide coverage for late payments. Gaynor v. Union Trust Company, 216 Conn. 459 582 A.2d 190 (1990); Velazques v. Marine Midland Automotive Financial Corp., 24 Conn. App. 455."
The factual findings of the arbitration panel are substantially supported from a review of the record herein. CT Page 9364
The conclusions that there was no coverage found by the arbitration panel is reasonable.
Accordingly, the arbitration decision of June 19, 1991 is confirmed and the application to vacate in case number CV 91-010437 is denied.
FRANK S. MEADOW, J.