[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
The plaintiff, Condor Capital Corp. (Condor), is the assignee of a retail instalment contract for a 1992 Toyota pick-up truck entered into between Gale Toyota and the defendant, Shawn Michaud. This lawsuit arises CT Page 8778 out of the defendant's default under the contract and the subsequent repossession and sale of the vehicle. In a single count complaint, the plaintiff seeks a deficiency judgment including the principal sum due and owing, an attorney's fee and interest pursuant to General Statutes §37-3a. The defendant filed a three-count counterclaim alleging violations of the Retail Instalment Sales Financing Act (RISFA), General Statutes § 36a-770 et seq. (count one), violations of the Uniform Commercial Code (UCC), General Statutes § 42a-9-501 and § 42a-9-504 (second count), and violation of the Connecticut Unfair Trade Practices Act (CUTPA), § 42-110a et seq. (third count). Presently before the court is the defendant's motion for summary judgment as to the plaintiff's complaint and the first and second counts of his counterclaim.
The defendant moves for summary judgment as to the complaint on the ground that there are no material facts in dispute regarding the plaintiff's failure to comply with RISFA in connection with the repossession and sale of the vehicle such that the plaintiff is therefore barred from recovering a deficiency judgment. Further, the defendant moves for partial summary judgment as to the first and second counts of his counterclaim on the ground that there are no material facts in dispute regarding the plaintiff's violations of RISFA and the UCC, and he is therefore entitled to statutory damages pursuant to General Statutes § 36a-785 (i) and § 42a-9-507 and attorney's fees pursuant to General Statutes § 42-150bb.
The defendant filed his motion for summary judgment on November 16, 1999. In support of the motion, the defendant submits an affidavit dated February 21, 2000.[1] The defendant attests that on or about March 1, 1996, he executed a retail instalment contract, which was subsequently assigned to the plaintiff, for the purchase of a 1992 Toyota pick-up truck. He further attests that the plaintiff repossessed the vehicle in question on or about April 29, 1997, that he does not remember receiving any notices prior to the repossession, that he did not redeem the vehicle, that he did not receive proper or reasonable notice of the time and place of any public sale, and that the plaintiff failed to provide him a written itemization of the disposition of the proceeds of the sale. Three exhibits are attached to the defendant's affidavit: 1) Exhibit A, the retail instalment contract executed by the defendant and Gale Toyota; 2) Exhibit B, an invoice, dated April 30, 1997, from Charter Oak Recoveries, an entity in Old Lyme, Connecticut, employed by the plaintiff to recover the vehicle, billing the plaintiff for the cost of recovering the vehicle and shipping it to the plaintiff in Hicksville, New York; and 3) Exhibit C, a notice dated May 7, 1997, and entitled "NOTICE OF SALE OF COLLATERAL," which references the vehicle and states that "the above-referenced Vehicle will be sold at a public auction at the Orlando A/A located at Florida on or about 6/1997. The Vehicle will CT Page 8779 be stored at: Condor Capital Corp."
In opposition to the defendant's motion, on February 18, 2000, the plaintiff submitted the affidavit of Robert Giusti, the vice president of Condor, dated February 16, 2000, which states in pertinent part as follows: Gale Toyota assigned its retail instalment sales contract with the defendant for the vehicle in question to Condor. As of April 1, 1996, the defendant was obligated to make monthly payments directly to Condor. The defendant made nine (9) full payments and one partial payment. Eight of these payments were late, and the defendant was assessed late charges. On or about February 1, 1997, the defendant stopped making payments in default of the contract which default he failed to cure. Guisti further attests that Condor provided the defendant with several notices of its intent to repossess the vehicle, all in compliance with statutory requirements, prior to repossession; that on April 29, 1997, it caused the vehicle to be repossessed and sent the defendant a written notice of intent to dispose of the vehicle after twenty (20) days unless the defendant sent Condor a written notice of intent to redeem; that `upon information and belief' the vehicle remained in Connecticut for fifteen (15) days after repossession; that the vehicle was sold on October 8, 1997, at public auction for $5000; that the defendant's account was credited accordingly; and that "due notice" was given to the defendant of the disposition of the proceeds. Three exhibits were attached to Guisti's affidavit and referenced therein: 1) Exhibit A, the retail instalment contract; 2) Exhibit B, a notice dated April 29, 1997, advising the defendant of the plaintiff's intent to dispose of the vehicle after twenty days, and 3) Exhibit C, what appears to be a computer-generated printout dated October 21, 1997, of the defendant's account status after the sale of the vehicle.[2]
Before turning to the merits of the defendant's motion, the court first addresses the defendant's objection to the admissibility of certain additional evidence submitted by the plaintiff. The following procedural history is relevant. The return day for this case was May 11, 1999. On August 13, 1999, the defendant served his first set of interrogatories and requests for production in response to which the plaintiff filed a notice of compliance on October 5, 1999. Among the production requests were the following: "1. All correspondence or notices sent by the plaintiff to the defendant in connection with the loan transaction or repossession alleged in the complaint, including a copy of the envelope in which all such correspondence was mailed, certified mail receipts, and return receipts" and "6. A mail log, or other writing, that evidences when the notices, described in Request for Production No. 1., above, were mailed, and that those notices were mailed by certified or registered mail." CT Page 8780
Oral argument on the defendant's motion was held on February 22, 2000. As of the time of argument, the defendant claimed that he had received no notice which constituted compliance with either General Statutes §36a-785 (b) or § 36a-785 (c). The defendant maintained that Giusti's bald assertions in his affidavit regarding the several notices that were purportedly sent to the defendant without the production of copies of the actual notices and proof of certified or registered mail is insufficient to create an issue of fact as to whether the statutorily mandated notices were sent.
At the plaintiff's counsel's insistence that the plaintiff be allowed an additional opportunity to produce the notices referenced in the Giusti affidavit, the court allowed that any such notices be produced no later than March 7, 2000, at which point the court would rule on the basis of the record as of that date. As of March 7, 2000, the plaintiff produced only one additional document dated March 13, 1997, which the plaintiff contends constitutes compliance with § 36a-785 (b). Subsequent to March 7, 2000, despite the ruling of the court and without the court's permission, the plaintiff's counsel arranged for further oral argument on March 27, 2000, at which time the plaintiff produced several additional documents, not heretofore produced to the defendant despite being within the scope of his August 1999 discovery requests, which the plaintiff contends satisfy General Statutes § 36a-785 (c), § 36a-785 (d) and § 36a-785 (e).
The defendant understandably objects to the late production. of these documents. The court shares in the defendant's frustration with the conduct of the plaintiff in failing to produce these documents to the defendant and to the court in a timely manner. These documents should have been produced to the defendant in response to his discovery request made in August, 1999. Not only did the plaintiff fail to do so but moreover misrepresented to the court that it had fully complied with discovery by filing on October 5, 1999, a notice of compliance with the defendant's discovery request. In obvious reliance on both such notice and the lack of documents produced evidencing compliance with the requirements of Connecticut law, the defendant spent time and effort preparing the summary judgment motion before the court. The plaintiff, despite having had notice of the scheduled oral argument on the motion and having appeared to argue the motion on February 22, 2000, still failed to produce any of these documents at that time. Despite these circumstances, and over the defendant's objection, the court allowed the plaintiff additional time until March 7, 2000, to produce these documents upon the urging of the plaintiff's counsel. By March 7, 2000, the plaintiff had produced only one additional document. Moreover, despite specific notice that the court's ruling would be based on the record as of March 7, 2000, the plaintiff bypassed the court-imposed deadline, CT Page 8781 arranged for further argument and engaged in additional briefing, all without the court's permission. While the court commends the plaintiff's counsel for her tenacity, the fair administration of justice obligates the court to insist on compliance with its rules and orders.
Courts "do not condone any flaunting of the rules of discovery. . . ."Velazquez v. Marine Midland Automotive Financial Corp., 24 Conn. App. 455,459, 590 A.2d 116 (1991). When such a situation presents itself, as it has here, the appropriateness of a sanction is within the discretion of the court. See id. Thus, in light of the prejudice and delay caused to the defendant by the plaintiff's inexcusable failure to abide by the rules of discovery, the rules of practice and a court-ordered deadline, the court will not consider any submissions of the plaintiff filed after March 7, 2000, and considers only the record as of that date in accordance with its previous ruling. The court now turns to the merits of the motion.
 I STANDARD
"The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried."Wilson v. New Haven, 213 Conn. 277, 279, 567 A.2d 829 (1989). "The judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49; see also Sherwood v. DanburyHospital, 252 Conn. 193, 201, 746 A.2d 730 (2000).
"A genuine issue has been variously described as a triable, substantial or real issue of fact . . . and has been defined as one which can be maintained by substantial evidence." (Citation omitted; internal quotation marks omitted.) United Oil Co. v. Urban RedevelopmentCommission, 158 Conn. 364, 378, 260 A.2d 596 (1969). "[T]he genuine issue aspect of summary judgment procedure requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred." (Internal quotation marks omitted.) Id., 378-79. "A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) Hammer v. Lumberman's Mutual Casualty Co.,214 Conn. 573, 578, 573 A.2d 699 (1990).
"Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary CT Page 8782 judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgement]." (Internal quotation marks omitted.) Maffucci v. Royal Park Ltd.Partnership, 243 Conn. 552, 554-55, 707 A.2d 15 (1998).
 II APPROPRIATENESS OF SUMMARY JUDGMENT PROCEDURE
In opposition to the defendant's motion for summary judgment, the plaintiff first argues that the defendant's motion for partial summary judgment on the plaintiff's complaint and counts one and two of the defendant's counterclaim is faulty as it is actually based on special defenses. The plaintiff cites numerous superior court decisions demonstrating virtually unanimous agreement that a motion for summary judgment as to a special defense is improper since Practice Book §17-44 makes no provision for it. See, e.g., Goldstein v. Mitoi, Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 416934 (January 7, 2000, Devlin, J.); Star Distributors v. Post Liquors,Inc., Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 56867 (February 23, 1998, Flynn, J.); Prigitano v. ConnecticutLife Casualty Ins. Co., Superior Court, judicial district of New Haven at Meriden, Docket No. 254302 (January 22, 1998, Dorsey, J.T.R.); Dubourgv. Osborn, Superior Court, judicial district of Litchfield, Docket No. 65070 (July 5, 1995, Pickett, J.); Centerbank v. Silvermine LandInvestment Corp., Superior Court, judicial district of Stamford, Docket No. 122942 (December 16, 1992, Lewis, J.) (8 Conn.L.Rptr. 61). Practice Book § 17-44 allows any party to move for summary judgment as to a complaint, counterclaim, cross complaint or any count thereof, "`but there is no provision under Connecticut practice for a "judgment" to be entered on a special defense.'" Prigitano v. Connecticut Life CasualtyIns. Co., supra, Superior Court, Docket No. 254302, quoting Dubourg v.Osborn, supra, Superior Court, Docket No. 65070.
The plaintiff's argument, however, demonstrates a misinterpretation or misapplication of the above cases and a failure to distinguish between permissibly moving for summary judgment as to a complaint on the basis ofa special defense; see, e.g., Doty v. Mucci, 238 Conn. 800, 802-03,679 A.2d 945 (1996) (affirming trial court's grant of summary judgment in favor of defendant on the basis of his special defense); and impermissibly moving for summary judgment as to a special defense. See CT Page 8783Centerbank v. Silvermine Land Investment Corp., supra,8 Conn.L.Rptr. 62
("There is a significant difference between requesting a summary judgment on . . . [a] complaint, and seeking judgment against . . . [a] special defense. The latter is not permitted, but the former is appropriate.").
In the present case, the defendant is not seeking summary judgment as to a special defense. He seeks summary judgment as to the plaintiff's complaint as well as to two counts of his counterclaim. Thus, the plaintiff's argument is without merit.
 III APPLICABILITY OF RISFA AND THE UCC
The plaintiff next claims that it is a "holder in due course" and was therefore entitled to be free of any RISFA or UCC claims raised by the defendant. The plaintiff further claims that RISFA is inapplicable because it is not a retail seller within the meaning of General Statutes § 36a-770 (14). The court rejects both arguments.
First, RISFA and the UCC are applicable to this retail instalment contract based on the language of both § 36a-770 (a) and § 36a-779. Section 36a-770 (a) provides in relevant part: "The Uniform Commercial Code. A transaction subject to sections 36a-770 to 36a-778, inclusive . . . is also subject to the Uniform Commercial Code. . . ." Section36a-779 provides: "Assignment of contract. Any sales finance company may purchase or acquire from the original holder thereof or from any other sales finance company any retail instalment contract or any instalment loan contract on such terms and conditions as may be mutually agreed upon not inconsistent with the provisions of 36a-770 to 36a-788, inclusive,42-100b and 42-100c. Such contracts constitute chattel paper, as defined in section 42a-9-105 (1)(b), and are governed by article 9 of title 42a except as otherwise provided in said sections." The plaintiff's claim against the defendant arises out of a retail instalment contract assigned to the plaintiff by Gale Toyota. The assignment of the contract by Gale Toyota to the plaintiff did not take the contract out of the purview of RISFA, as evidenced by the language of § 36a-779.
Second, while the plaintiff may not be a "retail seller" within the meaning of § 36a-770 (14), it is certainly a "sales finance company" within the meaning of § 36a-770 (15). This very section indicates that the General Assembly expressly contemplated sales finance companies under RISFA. The plaintiff is therefore liable for its actions in violation of RISFA as well as the UCC. CT Page 8784
Third, the plaintiff's argument that it is a "holder in due course" is "an attempt to impart the attributes of negotiability to an otherwise nonnegotiable instrument" and is contrary to public policy. FairfieldCredit Corp. v. Donnelly, 158 Conn. 543, 550, 264 A.2d 547 (1969). InFairfield Credit Corp. v. Donnelly, supra, 548-52, the court rejected the attempt of an assignee of a retail instalment contract to "give [itself] the status of a holder in due course of a negotiable instrument"; id., 549; by virtue of a clause in the retail instalment contract providing that "[t]he Buyer . . . will not assert or use as a defense any such claim against the assignee." Id., 548. Relying on Connecticut's "very strong public policy in favor of protecting purchasers of consumer goods" as evidenced by our extensive consumer protection statutes, the court held that express contractual provisions the purpose of which are to give assignees "holder in due course" status are unenforceable as against public policy. Id., 551. In so holding, the court further rejected the assignee's claim that General Statutes § 42-98 (now § 36a-779), providing for assignment of retail instalment contracts, manifests legislative approval of clauses waiving defenses against assignees. Thus, in the present case, the plaintiff's attempt to claim "holder in due course" status to immunize itself from defenses based upon our consumer protection statutes is against public policy.
Additionally, the plaintiff's claim that it is a "holder in due course" is even more tenuous than the assignee's position in Fairfield CreditCorp. v. Donnelly, supra, 158 Conn. 543. In that case, the court rejected an express contractual provision waiving defenses against the assignee. In the present case, not only does the contract lack such an express
waiver, it actually contains a notice in bold capital letters quite to the contrary, stating in pertinent part: "NOTICE: ANY HOLDER OF THISCONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THEDEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINEDPURSUANT HERETO OR WITH THE PROCEEDS HEREOF." The contract additionally provides: "If we retake the Vehicle, our right to sell it and hold you responsible for any deficiency, and your right to redeem the vehicle before we sell it will be subject to any notice and cure rights which may apply under the laws of Connecticut." Thus, by virtue of its assignment and repossession of the defendant's vehicle, the plaintiff was therefore bound by the terms of the contract to comply with the provisions of RISFA and the UCC.
Finally, the court finds it disingenuous of the plaintiff at this point to argue that the notice provisions of RISFA and the UCC do not apply to it when they obviously made some effort to comply with these provisions.
For all of the foregoing reasons, the court finds that the plaintiff, as the assignee of a retail instalment contract, was obligated to comply CT Page 8785 with the requirements of RISFA and the UCC.
 IV COMPLIANCE WITH RISFA A
"In consumer transactions, strict compliance with statutory provisions that prescribe the informational content of retail instalment contracts is mandatory and is not excused by inadvertence." Gaynor v. Union TrustCo., 216 Conn. 458, 475, 582 A.2d 190 (1990). RISFA is a remedial statute and must be construed liberally in order to implement its consumer protection policies. See Barco Auto Leasing Corp. v. House, 202 Conn. 106,116, 520 A.2d 162 (1987). It is designed to protect the consumer from the abuses of repossession and to encourage creditors to comply strictly with the Act. See Jacobs v. Healey Ford-Subaru, Inc., 231 Conn. 707, 722,652 A.2d 496 (1995).
RISFA sets forth the steps that the holder of a retail instalment sales contract must undertake when it seeks repossession of consumer goods purchased under a retail instalment contract. See General Statutes §36a-785. Specifically, § 36a-785 (b) provides that the holder of such a contract may, but is not required to, serve upon the retail buyer personally or by certified or registered mail a notice of intention to repossess on account of the buyer's default. If the holder chooses this option, it must state the nature of the default and the period of time at the end of which the goods will be taken if the default is not cured. If the retail buyer does not cure the default with the period of time set forth in the notice, the holder can then retake the goods and resell them in accordance with subsections (d), (e), (f), (g) and (h) of the statute without any right of redemption. This notice must be served on the retail buyer not less than ten (10) days prior to the time set for repossession and must "briefly and clearly state" what the buyer's rights are under this subsection should the goods be retaken. See General Statutes §36a-785 (b).
If the holder of a retail instalment contract does not elect to give notice of its intention to repossess in compliance with § 36a-785
(b), then he must afford the retail buyer an opportunity to redeem in conformity with § 36a-785 (c). Under subsection (c), the holder of the contract must retain the vehicle within the state from which it was retaken for fifteen (15) days after the retaking and permit the retail buyer to redeem the goods upon the payment of the unaccelerated amount owed on the contract plus interest and the actual and reasonable expenses of the retaking and storage. The holder must provide the retail buyer CT Page 8786 with notice of this right to redeem by certified or registered mail or personal delivery within three days of the repossession. See General Statutes § 36a-785 (c).
If the retail buyer does not redeem the vehicle within fifteen (15) days after repossession, § 36a-785 (d) provides that the holder of the contract shall then sell the vehicle at a public or private sale which may not be held within fifteen (15) days of or more than one hundred eighty (180) days after the retaking. The holder must give the retail buyer at least ten (10) days written notice of the time and place of any public sale, or the time after which any private sale or other intended disposition is to be made, either personally or by registered mail or certified mail to the retail buyer's last known place of business or residence. See General Statutes § 36a-785 (d). Section 36a-785 (e) then mandates that within thirty (30) days after the resale, the holder of the contract shall give the retail buyer a written statement itemizing the disposition of the proceeds.
 B Section 36a-785 (b)
The permissive election to proceed pursuant to § 36a-785 (b) requires the plaintiff to serve upon the defendant a notice of its intention to repossess, with said notice being served upon the defendant personally or by registered or certified mail. The notice is required to contain: a statement of the default, the period at the end of which the vehicle will be retaken and a brief, clear statement of what the retail buyer's rights are in case of a retaking.
The defendant attests that he received no notice prior to the repossession. The plaintiff submits the affidavit of Giusti dated February 16, 2000, who attests that "Condor provided Michaud with several notices of its intent to repossess the vehicle . . . prior to the repossession." The plaintiff, however, failed to submit any of these "several notices" with Giusti's affidavit. Instead, in accordance with the court's allowance of time until March 7, 2000, the plaintiff submitted to the court on or about March 3, 2000, one letter dated March 13, 1997, addressed to the defendant, which it contends is evidence of its compliance with § 36a-785 (b).
The reliability and therefore admissibility of this March 13, 1997 letter is seriously questioned. No person with personal knowledge of the contents of this document has attested or certified as to its authenticity or accuracy. Furthermore, there is no attestation that this document was personally served or mailed by registered or certified mail CT Page 8787 to the defendant and otherwise no evidence submitted such as a post office receipt indicating such.
Even absent these deficiencies, this letter on its face fails to comply with subsection (b). Although the letter states the defendant's "amount past due" and a "last day for payment: 4-11-97," there is no notice indicating the plaintiff's intent to repossess if payment is not received. The letter does not state a period at the end of which the vehicle will be retaken. There is no statement of the defendant's rights in case the vehicle is retaken. This document, therefore, is not notice compliant with § 36a-785 (b).
 C Section 36a-785 (c)
Having failed to give a notice of intention to retake in compliance with subsection (b), the plaintiff was required to comply with §36a-785 (c). Under subsection (c), the plaintiff was required to retain the vehicle in Connecticut for fifteen days after repossession and provide the defendant, within three days of repossession, personally or by registered or certified mail, with a written statement of the unaccelerated amount due under the contract and the actual expenses associated with the repossession and storage of his vehicle.
The defendant argues that Exhibit B, an invoice dated April 30, 1997, from Charter Oak Recoveries, billing the plaintiff for the costs of recovering the vehicle and shipping it to the plaintiff in Hicksville, New York, and Exhibit C, a notice dated May 7, 1997, stating that "[t]he Vehicle will be stored at: Condor Capital Corp.," attached to his affidavit, evidence that the vehicle was taken out of the state of Connecticut within fifteen days of the repossession on April 29, 1997. The plaintiff argues in opposition that the May 7, 1997 notice "stated that the vehicle would be stored at Condor, not that it was already there." The plaintiff submits evidence in the form of Giusti's attestations that "[t]he vehicle was stored in Connecticut, not in New York at the time of that invoice" and "[u]pon information and belief," the vehicle remained in Old Lyme, Connecticut for more than 15 (fifteen) days after the repossession."
The actual date upon which the vehicle was shipped to Hicksville, New York, is a material fact to this issue and cannot be discerned with certainty from any evidence submitted by either party. The defendant, as the movant, bears the heavy burden of showing that it is quite clear what the truth is; see Witt v. St. Vincent's Medical Center, 252 Conn. 363,372-73 n. 7, 746 A.2d 753 (2000). This is a strict standard and one the CT Page 8788 court finds the defendant has failed to meet. Therefore, it cannot be determined whether the plaintiff violated the fifteen day requirement of subsection (c).
It is quite clear, however, as the defendant raised at oral argument, that the plaintiff has violated subsection (c) in another respect. As discussed above, having failed to proceed in accordance with § 36a-785
(b), the plaintiff was required to provide the defendant, within three days of repossession, personally or by registered or certified mail, with a written statement of the unaccelerated amount due under the contract and the actual expenses associated with the repossession and storage of his vehicle. The only document dated within three days of the repossession in evidence is a notice dated April 29, 1997, attached to the affidavit of Giusti as Exhibit B, stating that "[t]he sum for which you may redeem the vehicle is $1,588.57 + repo fees plus any redemption fees." This notice on its face is plainly inadequate to apprise the defendant of the amount required to redeem his vehicle. The notice requirement under subsection (c) is in no way unclear or difficult to follow. A claim of "+ repo fees" is not, as the statute requires, "a written statement of . . . the actual and reasonable expenses of retaking." This document dated April 29, 1997, thus, is not notice compliant with § 36a-785 (c).
 D Section 36a-785 (d)
Upon the defendant's failure to redeem within the allotted time, the plaintiff was required under § 36a-785 (d) to resell the vehicle within one hundred eighty days of repossession and to provide the defendant, "either personally or by registered mail or by certified mail receipted for on mailing," written notice of the time and place of the public sale. It is undisputed that the vehicle was sold by public auction on October 8, 1997, which is within the time allotted under this subsection.
The defendant argues, however, that he was not provided with notice of the time and place of this sale in compliance with subsection (d). In response to the defendant's discovery request of such documents of notice, the plaintiff produced to the defendant, and the defendant attaches to his affidavit as Exhibit C, a notice dated May 7, 1997, stating that the "Vehicle will be sold at a public auction at the Orlando A/A located at Florida, on or about 6/1997." Whatever the deficiencies are of this notice in failing to give a time, day and address of the public auction, the issue is whether the defendant received proper notice of the public auction which occurred on October 8, 1997. It was of this CT Page 8789 public auction on this date that the plaintiff was required to give notice to the defendant at least ten days prior to its occurrence. The notice dated May 7, 1997, patently fails to give any notice whatsoever of the time and place of the October 8, 1997 public auction. This notice therefore fails to comply with § 36a-785 (d).
 E Section 36a-785 (e)
After the vehicle was resold on October 8, 1997, § 36a-785 (e) required the plaintiff to provide the defendant within thirty (30) days with a written statement itemizing the use of the proceeds of the resale. The defendant attests that he was not provided with such a statement. The plaintiff offers the affidavit of Giusti who attests simply that "due notice" of the disposition of the proceeds was given to the defendant. The plaintiff failed to produce, however, the notice that it purportedly sent to the defendant. Attached as Exhibit C to Giusti's affidavit is what appears to be a computer generated printout of the last few entries made to the defendant's account reflecting the sale, which is not evidence that a written statement itemizing the proceeds of the sale was sent to the defendant in accordance with subsection (e). Thus, there is no evidence that the plaintiff complied with § 36a-785 (e).
 F Remedy
As discussed above, there are no disputed issues of fact regarding the plaintiff's failure to comply in one or more ways with subsections (b) or (c), (d) and (e) of § 36a-785. "The buyer's remedy must therefore be implemented in a fashion that will take full account of a governing statute that was purposefully designed to correct the often gross imbalance in bargaining power between a retail seller and a retail buyer. Shirley v. State National Bank of Connecticut, 493 F.2d 739, 742
n. 3 (2d Cir. 1974)." Barco Auto Leasing Corp. v. House, supra,202 Conn. 116; see also Prodoti v. McDermott Hyundai, Inc., Superior Court, judicial district of New Haven, Docket No. 293460 (October 3, 1990, Berdon, J.). In consumer transactions, failure to comply with the mandatory notice provisions of RISFA precludes recovery of a deficiency judgment. See Mack Financial Corp. v. Crossley, 209 Conn. 163, 166-67,550 A.2d 303 (1988); Credit Acceptance Corp. v. Tyson, Superior Court, judicial district of New Haven, Docket No. 418735 (July 1, 1999, Blue,J.); Ford Motor Credit Co. v. Lucisano, Superior Court, judicial district of New Haven, Docket No. 266629 (November 27, 1990, Mihalakos, J.). CT Page 8790
Therefore, as a result of the plaintiff's violations of RISFA, especially its violation of § 36a-785 (d), in failing to notify the defendant of the time and place of the public auction and thereby depriving him of the opportunity to bid on and repurchase the vehicle at such sale, and its violation § 36a-785 (e), in failing to provide the defendant with a written itemization of the proceeds of the sale, the plaintiff is precluded from recovering a deficiency judgment. See MackFinancial Corp. v. Crossley, supra, 209 Conn. 166-67. Accordingly, the defendant's motion for summary judgment as to the plaintiff's complaint is granted.
 V STATUTORY DAMAGES PURSUANT TO RISFA
The defendant claims in count one of his counterclaim statutory damages pursuant to § 36a-785 (i) for the plaintiff's violations of RISFA. Subsection (i) provides: "If the holder of the contract fails to comply with the provisions of subsections (c), (d), (e), (f), (g) and (h), after retaking the goods, the retail buyer may recover from the holder of the contract his actual damages, if any, and in no event less than one-fourth of the sum of all payments which have been made under the contract." General Statutes § 36a-785 (i). The plaintiff argues that the defendant is not entitled to any damages because subsection (i) is unequivocally conjunctive in its requirement that all subsections from (c) through (h) be violated before the defendant is entitled to damages. It is undisputed that the defendant makes no claim and presents no evidence that the plaintiff has violated subsections (t), (g) or (h).
The court has found no appellate authority addressing this issue. Two decisions are, however, noteworthy. First, in Jacobs v. HealeyFord-Subaru, Inc., supra, 231 Conn. 707, the facts and procedural history recited in that opinion indicate that the attorney trial referee awarded statutory damages pursuant to § 36a-785 (i) upon a finding that the creditor had violated only subsections (c), (d), (e) and (g). See id., 715. Second, in Gaynor v. Union Trust Co., supra, 216 Conn. 476-77, the court held that a violation of the notice provision of subsection (c) only, which specifies its own penalty, does not give rise to liability under subsection (i).
One Superior Court decision has considered and ruled upon the very argument made by the plaintiff. In Hunter v. American Honda FinanceCorp., Superior Court, judicial district of Hartford, Docket No. 587409 (April 4, 2000, Rittenband, J.) (27 Conn.L.Rptr. 35), the court held that subsection (i) "requires that the holder of the contract must fail to comply with the provisions of subsections (c), (d), (e), (f), (g) and
CT Page 8791 (h) as a condition of the buyer being awarded statutory damages." (Emphasis in original.) Id., 37. "The word `and' in that subsection means that all subsections mentioned therein must be violated for the plaintiff to recover statutory damages." (Emphasis in original.) Id. Because the holder in that case had failed to comply only with subsection (c), the court denied any recovery of damages under subsection (i).[3]
In the present case, it is at least clear that the plaintiff's violation of the notice provision of subsection (c) subjects the plaintiff to the sanction contained in that subsection, that is, the plaintiff forfeits the right to claim payment for the actual and reasonable expenses of retaking and storage and is liable for any actual damages suffered by the defendant because of such violation. Such violation does not, however, subject the plaintiff to liability under subsection (i). See Gaynor v. Union Trust Co., supra, 216 Conn. 476-77.
The question remains whether the defendant is entitled to statutory damages under subsection (i) because of the plaintiff's violations of subsections (d) and (e). Unlike subsection (c), these subsections do not themselves prescribe specific penalties for any violation. The court's determination is guided by well settled principles of statutory interpretation. "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citation omitted; internal quotation marks omitted.) Luce v. United Technoloaies Corp., 247 Conn. 126, 133,717 A.2d 747 (1998). "`In construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended.' Kron v. Thelen, 178 Conn. 189, 192, 423 A.2d 857 (1979); accord Willow Springs Condominium Assn., Inc. v. Seventh BRT DevelopmentCorp., 245 Conn. 1, 26, 717 A.2d 77 (1998)." Schreck v. Stamford,250 Conn. 592, 596-97, 737 A.2d 916 (1999). The court "must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve. . . . It is also a rule of statutory construction that those who promulgate statutes or rules do not intend to promulgate statutes or rules that lead to absurd consequences or bizarre results." (Internal quotation marks omitted.) Willow Springs Condominium Assn., Inc. v. Seventh BRTDevelopment Corp., 245 Conn. 1, 30-31, 717 A.2d 77 (1998).
Whether the word "and" as used in subsection (i) is to be construed in the conjunctive or disjunctive sense is determinative of the defendant's claim for statutory damages under that subsection. The Connecticut CT Page 8792 Supreme Court, has on occasion, construed the word "and" to mean "or," and vice versa, in order to effectuate the intention of the legislature and the public policy of the state. See State v. Angell, 237 Conn. 321,329, 677 A.2d 912 (1996); Commission on Hospitals Health Care v.Lakoff, 214 Conn. 321, 332, 572 A.2d 316 (1990); D'Occhio v. ConnecticutReal Estate Commission, 189 Conn. 162, 170, 455 A.2d 833 (1983); Baniav. New Hartford, 138 Conn. 172, 176, 83 A.2d 165 (1951). For example, inCommission on Hospitals Health Care v. Lakoff, supra, 214 Conn. 332, the court, in interpreting General Statutes § 19a-145, ruled that "[i]n order to achieve a reasonable and rational result that is harmonious with the broad socially ameliorative purposes of the statute, we construe the word `and' . . . to mean or'"
The court believes that this is an appropriate occasion, in order to effectuate the intent of the legislature as well as to achieve a reasonable result consistent with the very strong public policy in our state of consumer protection, to construe the word "and" in § 36a-785
(i) in the disjunctive sense. "Repossession statutes are enacted to protect the consumer from well documented repossession abuses and to encourage and promote compliance with the laws that govern such actions."Jacobs v. Healey Ford-Subaru, supra, 231 Conn. 722. The court therefore respectfully disagrees with the decision of the court in Hunter v.American Honda Finance Corp., supra, 27 Conn.L.Rptr. 35. To construe the word "and" in the pertinent statutory provision literally would frustrate not only the purpose of the statute to protect consumers but also its purpose to encourage strict compliance by creditors. Moreover, it defies common sense that the legislature would intend for such mandatory, strict compliance yet fail to provide any sort of statutory remedy in case of noncompliance. It cannot be, especially given the very important rights of the consumer protected by subsections (d) and (e), that the legislature intended that a creditor could escape liability altogether under the statute as long as such creditor managed to comply with just one of the six subsections listed in subsection (i).
Finally, given the design of RISFA to protect consumers from the abuses of repossession, the crux of § 36a-785 is really the mandatory notice provisions contained in subsections (b) or (c), (d) and (e). As the court reads subsection (f), it has no applicability in cases involving motor vehicles because such cases, as the subsection itself states, are governed by subsection (g). Thus, in cases where the goods repossessed are motor vehicles, the creditor could never be said to have violated subsection (f) because it has no applicability. To construe the word "and" in subsection (i) in the conjunctive sense, and therefore to require the consumer to prove a violation of an inapplicable subsection, is illogical, if not an impossibility, and results in the unreasonable and bizarre result of precluding statutory damages in any case involving CT Page 8793 motor vehicle repossession. Similarly, subsection (g) clearly has applicability only in cases involving motor vehicles or boats. To require consumers in repossession cases not involving such goods to prove a violation of subsection (g) is likewise illogical if not an impossibility and would have the effect of precluding statutory damages in any case not involving motor vehicles and boats.
The inescapable conclusion is that the overall, practical effect of literally construing "and" in the conjunctive sense would render subsection (i) completely meaningless. No consumer, regardless of the type of good repossessed, would ever be able to prove entitlement to statutory damages under subsection (i). Consumers of motor vehicles and boats could not prove a violation of the inapplicable subsection (f), and consumers of any goods other than motor vehicles and boats could not prove a violation of the inapplicable subsection (g). Such could not have been the intent of the legislature.
"We presume that the legislature had a purpose for each sentence, clause or phrase in a legislative enactment, and that it did not intend to enact meaningless provisions." (Internal quotation marks omitted.) Inre Baby Z, 247 Conn. 474, 522, 724 A.2d 1035 (1999); see also Ferrignov. Cromwell Development Associates, 244 Conn. 189, 196, 708 A.2d 1371
(1998). "If there are two possible interpretations of a statute, we will adopt the more reasonable construction over one that is unreasonable." (Internal quotation marks omitted.) Badolato v. New Britain, 250 Conn. 753,757, 738 A.2d 618 (1999).
Therefore, the court finds that construing the word "and" in the disjunctive sense in this instance avoids unreasonable results, promotes the very strong public policy of the state to protect consumers, encourages strict compliance with all provisions of § 36a-785 and is consistent with the liberal construction courts are required to give to the provisions of the statute. The defendant's motion for summary judgment as to count one of his counterclaim is granted. The defendant is entitled to statutory damages under § 36a-785 (i) as a result of the plaintiff's violations of subsections (d) and (e).[4]
 VI COMPLIANCE WITH THE UCC
The defendant argues that he is entitled to summary judgment as to count two of his counterclaim, seeking statutory damages pursuant to General Statutes § 42a-9-507 (1), on the ground that there are no disputed issues of fact regarding the plaintiff's violations of General Statutes § 42a-9-501 and § 42a-9-504. General Statutes § CT Page 879442a-9-507 (1) provides in relevant part that "[i]f the disposition has occurred the debtor . . . has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this part. If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus ten per cent of the principal amount of the debt or the time price differential plus ten per cent of the cash price."
Section 42a-9-501 provides in relevant part that after default by the debtor, both the secured party and the debtor have the rights and remedies provided in Part 5 of the UCC and those provided under the security agreement. See General Statutes § 42a-9-501 (1) and (2). The security agreement, i.e. the retail instalment contract, in this case contains a provision that "[i]f we retake the Vehicle, our right to sell it and hold you responsible for any deficiency, and your right to redeem the Vehicle before we sell it will be subject to any notice and cure rights which may apply under the laws of Connecticut." As discussed above, the plaintiff violated several mandatory provisions of RISFA. Moreover, § 42a-9-504 (3) provides in relevant part that "reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor. . . ." As discussed above, the notice dated May 7, 1997, that the defendant received contained no notice whatsoever of the public auction that took place on October 8, 1997, much less "reasonable notice of the time and place" of such auction. The plaintiff therefore violated §42a-9-504 (3).
The court therefore holds that the defendant's motion for summary judgment as to count two of his counterclaim is granted. The defendant is entitled to damages pursuant to § 42a-9-507. It is noted that these damages are in addition to the statutory damages awarded pursuant to § 36a-785 (i) since the remedies of RISFA and the UCC are cumulative. See Jacobs v. Healey Ford-Subaru, Inc., supra, 231 Conn. 722.
 VII ATTORNEY'S FEES
The defendant claims attorney's fees pursuant to General Statutes § 42-150bb, which provides in relevant part: "Whenever any contract or lease entered into on or after October 1, 1979, to which a consumer is a party, provides for the attorney's fee of the commercial party to be paid by the consumer, an attorney's fee shall be awarded as a matter of law to the consumer who successfully prosecutes or defends an action or a counterclaim based upon the contract or lease. . . . [T]he size of the CT Page 8795 attorney's fee awarded to the consumer shall be based as far as practicable upon the terms governing the size of the fee for the commercial party. . . . For the purposes of this section, `commercial party' means the seller, creditor, lessor or assignee of any of them, and `consumer' means the buyer, debtor, lessee or personal representative of any of them. The provisions of this section shall apply only to contracts or leases in which the money, property or service which is the subject of the transaction is primarily for personal, family or household purposes." "[T]he phrase, `the terms governing the size of the fee for the commercial party,' [refers] . . . to the attorney's fees provisions in the parties' contract. . . ." Rizzo Pool Co. v. Del Grosso, 240 Conn. 58,76, 689 A.2d 1097 (1997).
The relevant provision in the retail instalment contract provides that "[i]f we have to sue you to collect this Contract, you will pay our costs and reasonable attorney's fees up to 15% of the amount of any court judgment entered against you. . . ." The defendant contends that he is therefore entitled to attorney's fees in the amount of 15 percent of his recovery. The court agrees that the defendant is entitled to attorney's fees pursuant to § 42-150bb, and so holds, but with the further refinement that the defendant is entitled to attorney's fees upon an evidentiary showing of reasonableness; see Rizzo Pool Co. v. Del Grosso, supra, 240 Conn. 77; in an amount not to exceed 15 percent of his recovery.
 CONCLUSION
Because of the plaintiff's violations of General Statutes § 36a-785
(c), (d) and (e), the plaintiff is precluded from recovering a deficiency judgment. The defendant's motion for summary judgment as to the plaintiff's complaint is granted.
Additionally, because of the plaintiff's violations of General Statutes § 36a-785 (d) and (e), the defendant's motion for summary judgment as to count one of his counterclaim is granted. The defendant is entitled to statutory damages pursuant to General Statutes § 36a-785 (i).
The plaintiff has also violated General Statutes § 42a-9-501 and § 42a-9-504. The defendant's motion for summary judgment as to count two of his counterclaim is granted. The defendant is entitled to statutory damages pursuant to General Statutes § 42a-9-507 (1).
Finally, because the defendant has successfully defended the plaintiff's action and prosecuted counts one and two of his counterclaim, the defendant is entitled to an award of attorney's fees pursuant to General Statutes § 42-150bb. CT Page 8796
The court hereby orders that within thirty (30) days from the date of this judgment the parties may submit to the court a written joint stipulation as to the appropriate amount of damages and/or attorney's fees to be awarded to the defendant or the defendant may file a motion for a hearing in damages and attorney's fees to be subsequently on the short calendar.
Peck, J.